# City of Chicago

## v.

## F. B. Sherwood et al.

*Filed at Ottawa November 20, 1882.*

1. Paving contract *with a city—construed—who are "representatives of property."* A person entered into a private contract with the owners of a portion of the property fronting on a street in a city, to curb, grade and pave the street fronting their property, and the city council afterwards made a contract with the same person, evidenced by an order of record, for the curbing, grading and paving of the street in front of the other property on the street not embraced in the private contract, in which second contract it was recited, that "whereas, the owners and representatives of three-fourths of the property fronting on" the street had made a private contract for curbing, etc., the street, with such contractor, and in which a contract was ordered to be made with the same person to make a similar improvement of the street in front "of the property not represented in said private contract," at the same price. It was *held*, that the words "representatives of property," in the contract with the city, meant only those who had legal authority to represent the property and bind the owners by their undertaking, and not those who might have assumed to represent such property, and that the contract with the city embraced the improvement of the street in front of all the property, except such as the owners, or those having authority to bind the owners, had contracted to have done, so that the two contracts should embrace the entire work on the street.

2. In such case the city had the right to levy a special assessment upon any property fronting on the street improved, for the cost thereof, where the owners thereof had not bound themselves to pay the contractor by themselves, or through their authorized agents.

3. Special assessment—*prima facie evidence of its lawfulness.* A special assessment of property for the improvement of a street in front of the same, is of itself at least *prima facie* evidence that the property is lawfully assessed, and the burden of proof is upon the owner to show that it is not so assessed, and this may be done by showing that the work on the street was done under a private contract with the owner or his duly authorized agent.

4. Same—*letting work to lowest bidder.* Where the order and contract of the city of Chicago, for the curbing, grading and paving of a street, or portion thereof, is adopted by a vote of more than two-thirds of the aldermen elected, the law does not require that the work shall be let to the lowest bidder, in order to justify a special assessment upon the property benefited, for the cost of the improvement.

Appeal from the Appellate Court for the First District;—
heard in that court on appeal from the County Court of
Cook county; the Hon. Mason B. Loomis, Judge, presiding.

Mr. Francis Adams, for the appellant:

The assessment roll embodied in the report of the commis-
sioners, made a *prima facie* case for the appellant in support
of the issues, viz: whether the property was assessed more
than it would be benefited by the improvement, or more than
its proportionate share of the cost of the improvement.
These are the only issues which can be tried on the hearing
of an application for confirmation of an assessment.   Muni-
cipal Incorporation Law, sec. 145; *Guild* v. *City of Chicago,*
82 Ill. 483; *Fagan* v. *City of Chicago,* 84 id. 230; *Bigelow* v.
*City of Chicago,* 90 id. 52.

The report of the commissioners being put in evidence, the
burden of proving that something was omitted, or improperly
done, was cast on appellees.   *McAuley* v. *City of Chicago,*
22 Ill. 563.

The court erred in overruling appellant's objection to the
introduction in evidence of the contract between Shaw and
private owners of property.   Newton Burke had no right to
sign that contract, as he had no authority to represent the
property he assumed to represent.   The fact that the work
was let to Shaw without advertising for bids, constitutes no
defence, even though such letting was not authorized by a
vote of the council.   Section 164 of the statute does not im-
pose any penalty for letting work without advertising for
bids, nor does it declare void a contract so let.   It is merely
directory.   *City of Chicago* v. *People ex rel.* 56 Ill. 334.

Messrs. J. P. & T. R. Wilson, for the appellees:

The work was done under a private contract with the
owners of property fronting on the street.   The city has no
power to levy an assessment to pay for work not performed

by the city, and for which it has incurred no liability. *Dorathy* v. *City of Chicago*, 53 Ill. 79.

No valid contract was entered into by the city for the doing of the work for which the assessment was levied. Section 50, article 9, of the general Incorporation act, requires such contracts to be let to the lowest bidder, unless such contract is authorized by a vote of two-thirds of all the aldermen. A municipal corporation can only enter into contracts in the mode prescribed by its charter. Dillon on Municipal Corporations, sec. 388; *Brady* v. *Mayor*, 20 N. Y. 812; *Harlem Gas Co.* v. *Mayor of New York*, 33 id. 309; *Macey* v. *Titcomb*, 19 Ind. 135; *Bonesteel* v. *Mayor*, 22 N. Y. 162; *White* v. *New Orleans*, 15 La. Ann. 667; *Zottmann* v. *San Francisco*, 20 Cal. 96; *Nast* v. *St. Paul*, 11 Minn. 174.

An assessment levied for work not done under a valid contract with the city, is illegal. *Miller* v. *Milwaukee*, 18 Wis. 92; *Wells* v. *Burnham*, 20 id. 112; *Hasbrouck* v. *Milwaukee*, 21 id. 217.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This case comes here by appeal from the Appellate Court for the First District. Application was made in the county court of Cook county for judgment of confirmation of a special assessment, and that court sustaining exceptions of appellees to the commissioners' report, refused to give the judgment sought against the property in question of appellees. This judgment was affirmed by the Appellate Court.

The record shows that on the 20th of May, 1879, a contract was entered into between William E. Shaw, of the first part, and "the owners and representatives of property on West Monroe street and Oakley avenue," of the second part, whereby said Shaw covenanted and agreed, "for and in consideration of the payments to him to be made by the parties of the second part," as thereinafter set forth, "to fill, curb with curb-stones, grade, and pave with wooden block pave-

ment, in front of the property owned or represented by the
parties of the second part on said West Monroe street,
between Robey street and Oakley avenue," according to cer-
tain specifications. The work was to be done "under the
supervision of the department of public works of the city of
Chicago, and to its satisfaction and acceptance. * * *
The said second parties, each for himself, agrees to pay said
first party the following amounts when said work shall be
completed in front of the property which they own or repre-
sent." The contract is signed "William E. Shaw, party of the
first part," and in the following form by the others, the last
being the signature purporting to affect appellees' property :.

| Feet Front. | Parties of Second Part. | Between what Streets. |
|---|---|---|
| 22 | Charles E. Steering, No. 770 ... | Robey and Seeley avenues. |
| 20 | M. F. Whitaker.......... .. .. | "     "     "     "          " |
| * | * | |
| 393 | Seeley Estate, per Newton Burke, Agent for Seeley Estate....... | Seeley avenue to Hoyne ave. |

On the 10th of September, 1879, the city council, by a vote
of thirty in the affirmative to one in the negative, being a
majority of more than three-fourths of all the aldermen
elected, adopted the following :

"Whereas, the owners and representatives of three-fourths
of the property fronting on West Monroe street, between
Oakley avenue and Robey street, have made a private con-
tract with W. E. Shaw to curb with curb-stone, grade, and
pave said West Monroe street with white pine blocks, the
blocks to be six inches long, and to be set on one inch sound
pine boards, with sand under the same for bedding, using
lake shore gravel between the blocks, and for top-dressing
the same. Therefore be it ordered, that the commissioner of
public works grant a permit to said W. E. Shaw to curb,
grade and pave said West Monroe street, between said points,
and to enter into a contract with said W. E. Shaw for the

city's portion of said work, at a price not to exceed the price named in said contract. And it is further ordered, that the commissioner of public. works prepare and report to this council a proper ordinance for making the same kind of improvement in front of the property not represented in said private contract, between said points on said West Monroe street, and enter into a contract with said W. E. Shaw for curbing, grading and paving the same, at a price not to exceed the price named in said private contract, payable only from the special assessment for said work, when the same shall be collected,—all costs for engineering and inspecting to be paid by the contractor. The said curbing, grading and paving to comply in all particulars with the city ordinances.

The ordinance prepared and adopted pursuant thereto is not set out in the record. But on the 14th of May, 1880, Shaw executed to, and filed with, the city a bond, in the condition whereof, among other things, is the following: "The condition of the above obligation is such, that whereas the above bounden William E. Shaw has entered into a certain contract with the owners of the property abutting on West Monroe street, between Robey street and Oakley avenue, in the city of Chicago, bearing date the 29th day of May, A. D. 1877, for curbing, grading and paving the above named street between said points, a copy of which is hereto annexed, for which work, and the cost and expense of the same, the said Shaw relies solely on his said contract, the city of Chicago not to be in any way responsible or liable therefor."

In passing upon the questions presented by this record, the first inquiry is, what is meant by the words "representatives of property," as used in the contract between Shaw and the city, and in the order of the city council? Counsel for appellees insist that it means only those who assume to represent property, while counsel for appellant contends it means only those who have legal authority to represent the property and bind the owners by their undertaking,—and we have no

doubt this is the correct interpretation of the words. The contract with the private parties and the contract with the city were evidently intended to include the entire work, and Shaw expected to be paid by the one or the other for every part of the work. It was not expected Shaw was to do any of the work for nothing, and it was expected the condemnation of the city would secure payment from all the property not included within the private contract. The owner of the property bound himself by contract, and the only possible object of which we can conceive for contracting with representatives of property is, that they might bind the owners of the property, for in legal presumption the improvement was for the benefit of the owners, and we can not presume the mere representatives of property had any personal interest in the improvement. The price to be paid was graduated by extent of property,—or, in other words, by interest of owner, —and the burden is one that falls upon the owner. "Representative," we must therefore assume, means, legally, and when here used was intended to mean, what the term imports,—that is, one having lawful authority to act in behalf of the property and bind the owner in regard thereto—not merely one having no such authority, but assuming to have it.

Passing from this inquiry, we come next to the objection that the contract was not let to the lowest bidder. But when it is determined that the term "representatives of property" means only those who have legal authority to act in behalf of the property, and bind the owner with reference thereto, it must follow the property here in question was not included in the contract made between Shaw and the private parties, but must have been included within the contract between Shaw and the city. The assessment is itself, at least, *prima facie* evidence that this property is lawfully assessed, and the burden is upon appellees to show that it is not so assessed. Doubtless this might have been done by showing a contract between Shaw and the owner of the property, either made in

person or through a legal representative; but this has not been attempted. No one pretends that Newton Burke had any authority to bind the owners of this property by a contract with Shaw, in regard to paving the street in front of the property. If this property is included in the order of the city council, and in the contract between Shaw and the city, it was not necessary that the work should have been let to the lowest bidder, because they were adopted by a vote of more than two-thirds of all the aldermen elected. Rev. Stat. art. 9, chap. 24, sec. 50.

So, also, in this view, the objection that the object of the assessment, is to pay for work done under private contract, is untenable. This work was not contracted to be done by private contract.

We perceive no sufficient reason why this property should not bear its just proportion of the burden of making this improvement. It has the full benefit of the improvement, and its owners have not, as have their neighbors, contributed thereto.

The judgment of the court below is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*