NELLIE BROWN, D. G. TUTT AND L. N. BEADLES v. MARY MASSEY.

(Filed March 4, 1904.)

**PETITION TO OPEN JUDGMENT OR ORDER ON SERVICE BY PUBLICATION ONLY.** A petition to open a judgment or order rendered without other service than by publication in a newspaper, may be made by a party to the original judgment, or one to whom the party has conveyed his interest in the subject-matter of the suit.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*John Devereux* and *Buckner & Sons,* for plaintiffs in error.

*Lawrence & Huston,* for defendant in error.

STATEMENT OF FACTS.

On the 28th day of January, 1902, Mary Massey filed her petition in a suit to quiet title to lots 7 and 8, in block 61, of the sub-division of the city of Guthrie, Logan county, Oklahoma Territory, known as Capitol Hill, and in said petition she named Nellie Brown and D. G. Tutt as defendants. On the same day she filed her affidavit, alleging that the defendants were non-residents, and on the 30th day of January, 1902, caused to be published a notice of the pendency of said action in the Oklahoma Guide. On the 15th day of March, 1902, the plaintiff, Mary Massey, took a de-

fault judgment against the defendants Nellie Brown and D. G. Tutt; afterwards in the month of July, 1902, the defendants, Nellie Brown and D. G. Tutt and L. N. Beadles, as their successor in interest, filed in the said district court of Logan county, Oklahoma Territory, their joint application to open said default judgment, and to permit them to defend in said action. Notice of said application and affidavits in support thereof were each filed, and the said defendants at the same time filed their answer to the petition of the plaintiff. Thereafter, on the 10th day of February, 1903, the application to defend came on for hearing, and the district court overruled it, and refused to open the case, and allow the defendants to defend in said action, to which order and judgment overruling their application, and refusing to allow the defendants to appear in said action and defend, the defendants excepted, now except, and bring this case to this court by petition in error for review.

Opinion of the court by

IRWIN, J.: In this case plaintiffs in error rely upon one assignment of error only, that is, the judgment of the district court overruling their application to open said judgment, and denying them the right to appear and defend against the suit of Mary Massey; and in this plaintiffs in error claim that the court misconstrued and misapplied the law under the facts in this case. This application is made under section 3955 of the statutes of 1893, which reads as follows:

"A party against whom a judgment or order has been rendered, without other service than by publication in a newspaper, may, at any time within three years after the date of the judgment or order, have the same opened, and

be let in to defend.  Before the judgment or order shall be opened the applicant shall give notice to the adverse party of his intention to make such an application, and shall file a full answer to the petition, pay all costs, if the court require them to be paid, and make it appear to the satisfaction of the court, by affidavit, that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense; but the title to any property, the subject of the judgment or order sought to be opened, which, by it, or in consequence of it, shall have passed to a purchaser in good faith, shall not be affected by any proceedings under this section, nor shall they affect the title of any property sold before judgment under an attachment. The adverse party, on the hearing of an application to open a judgment or order, as provided by this section, shall be allowed to present counter affidavits to show that during the pendency of the action the applicant had notice thereof in time to appear in court and make his defense."

It is conceded by counsel on both sides in their brief that the sole and only reason on which the court based his refusal to set aside the judgment and allow the defendants to defend against the judgment of Mary Massey, was, that after said default judgment had been taken, the defendants, Brown and Tutt, had conveyed their interest in the subject-matter of the action to L. N. Beadles, and for this reason the defendants Brown and Tutt had no interest in the case, and were not proper parties to the proceeding, and that L. N. Beadles, the other plaintiff in this application, was not a party defendant in the original action, and consequently was not authorized under the statute to bring this action. The decision of this question calls our attention to another provision of the statute.  Section 3912, statutes of 1893, reads as follows:

"An action does not abate by the death or other disability of a party, or by the transfer of any interest therein, during its pendency, if the cause of action survive or continue.   In case of the death or other disability of a party, the court may allow the action to continue by or against his representative or successor in interest.   In case of any other transfer of interest, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made, to be substituted in the action."

This presents the question:   Does this action survive and is it pending within the meaning and intention of this section of the code?   Where the statute provides that the judgment of a court may be opened for certain causes within a certain stipulated time, the judgment does not become absolutely final until the expiration of that time, but, at all times between the rendering of the judgment and the expiration of the statutory time within which it may be opened, it is subject to this contingency, and dependent upon this condition, that it may be re-opened on application of the defendant in the original judgment, and he be allowed to defend.   This judgment being a judgment quieting the title to certain real estate, and the service having been made by publication only, it did not become absolute, so as to perfect the title in the plaintiff, until the expiration of the time within which the statute gave the right to open the same, and we think a fair and reasonable construction of the language of the statute would be that where it says, "A party against whom a judgment or order has been rendered without other service that by publication in a newspaper, may, at any time within three years after the date of the judgment or order, have the same opened and let in to defend," it means where the requirements of the statute are com-

plied with, the judgment must be opened, and for the purpose of an application to re-open, and for leave to defend, the case is pending during the time allowed by statute, and for this purpose it is a case pending; that as to these matters the case is not finally disposed of, and any person taking a judgment upon this kind of service, does so charged with a knowledge of the law, and under-the express condition that it may be opened for the cause and in the manner provided by section 3955 of the statute. This seems to be the construction put upon an identically similar statute by the supreme court of the state of Kansas, and in the case of *Albright v. Warkentin*, 31 Kans. 442; 2 Pac. 616. The Kansas supreme court, speaking through Judge Brewer, says:

"Every party ought to have his day in court; and while service by publication, which, in fact, imparts·no actual notice, must be sustained, yet a party thus served, and who has in fact no knowledge of the proceedings, ought to be granted a hearing if it can possibly be done consistent with the rights of other parties. The section provides ample protection to third parties dealing with property on the faith of the judgment, and the plaintiff certainly has no right to complain if, within a reasonable time, which by the statute is fixed at three years, the defendant demands an opportunity of litigating with him the justice of the claim. In fact, a judgment upon service by publication is, as between the parties, in the nature of a conditional judgment, one which becomes final and absolute only at the expiration of three years, and liable in the meantime to be opened whenever the defendant brings himself within the provisions of the section."

But it is contended by counsel for defendant in error that this application is not made by the proper parties. That the plaintiffs in error, Tutt and Brown, are not proper par-

ties, for the reason that they have conveyed away their interest in the subject-matter of the suit, and that Beadles is not a proper party as he was not a party to the record in the original action, and that the statute only applies to the party against whom the judgment or order was rendered. As above stated, our view is that this kind of an action survives, and is pending for the purpose of these proceedings. This brings us to a construction of the last clause of section 3912, statutes of 1893, cited above.    This section after treating of cases of death or other disability, and the proper proceedings in such cases, uses this language:

"In case of any other transfer of interest, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made, to be substituted in the action."

Now in this case all of the parties make application for this relief, the parties defendant in the original action, Brown and Tutt, and the person to whom their interests have been transferred, Beadles.    It is true the statute by a general provision provides in section 26 that:

"Every action must be prosecuted in the name of the real party in interest."

But section 3912 seems to make provision whereby, in certain cases, the action may be prosecuted by a party whose interest has been transferred, and this being a special provision, applying to particular cases,   must   control in this case.

In the case of *Ladd v. Stevenson*, reported in 112 N. Y., original, and 328 new paging, affirming 43 Hun. 541, wherein an application to open judgment and get leave to defend was made by the widow, as administratrix of one of

the original defendants, and by two other parties, who had acquired interest by purchase subsequent to the judgment, the court, by Judge Earl, says:

"In consequence of the filing of the notice of the pendency of this action, persons thus situated bear such a relation to the action that they could not only claim to be made parties during the pendency of the action, but they can also move the court and be heard in reference to any judgment rendered therein affecting their rights. The whole power of the court to relieve from judgments taken through mistake, inadvertence, surprise, or excusable neglect, is not limited by section 724, but in the exercise of its control over its judgments, it may open them on the application of any one for sufficient reason, in the furtherance of justice. The power to do so does not depend upon any statute, but it is inherent, and it would be quite unfortunate if it did not possess it to the fullest extent."

In *Vanderbilt v. Schreger*, 81 N. Y. 648, that court says:

"The court has power, both by its inherent jurisdiction, and by force of section 724 of the code, to set aside judgments, findings, verdicts and executions and other proceedings, in every case where there is reasonable grounds to believe that the party applying has been surprised, or has been put in peril of a loss of a hearing."

Section 40 of the Kansas code is identical with section 3912 of our code. It reads as follows:

"An action does not abate by the death or other disability of a party, or the transfer of any interest therein, during its pendency, if the cause of action survive or continue. In case of death or other disability of a party the court may allow the action to continue by or against his representative or successor in interest. In case of any other transfer of interest, the action may be continued in the name of the orig-

inal party, or the court may allow the person to whom the transfer it made to be substituted in the action."

Thus it will be seen that the language of the Kansas code on this subject is the exact language of our code. The supreme court of that state in the case of *K. O. & T. R. R. Co. v. Smith*, 40 Kans., page 194, reported in 19 Pac. 636, speaking by Judge Valentine, say:

"In all cases of death or other disability of a party, the action can then be continued only by or against the representatives or successors in interest of such party, and not in such party's own name. It is only in cases of a transfer of interest, where the original party still exists, and where he or it is still able to prosecute or defend in his or its own name, that the action may be continued to be prosecuted to the end in his or its own name    *    *    *    ."

And in the case of *Albright v. Warkentin*, 31 Kans. 442; 2 Pac. 614, above cited, the Kansas court say:

"A judgment was obtained upon service by publication alone, and without any appearance of the defendant. Within three years therefrom defendant applied, under section 77 of the code, to open up the judgment and be let in to defend. He gave notice of his application, and plaintiff appeared in response thereto. He filed an answer containing a full defense, also an affidavit that he had a good defense, and that he had no personal knowledge whatever of the pendency of the action until after judgment; there was no counter testimony. Held, that defendant's application should have been sustained; that the trial court had no discretion to refuse it, and that for the purposes of said action, an averment that the defendant had no personal knowledge whatever, is equivalent to one that he had no actual notice."

The provisions of the California code are very similar to ours, and on this subject it is identical with ours. The

supreme court of that state in the case of *Plummer v. Brown,* 64 Cal. 429, also reported in 1 Pac. 703, say:

"We think that Martha Brown and Thom, after acquiring the entire interest of the defendant in the subject-matter of this action, were his 'legal representatives' within the meaning of the phrase as used in section 473, code civ. proc. 'An assignee or grantee is a legal representative of the assignor or grantor in regard to the thing assigned or granted.' They certainly had acquired the right to represent him. The transfer of his interest to them entitled them to have the action continued in his name, or the court might allow them to be substituted for him. (Code civil proc. 385.) 'To represent a person is to stand in his place, to act his part, exercise his right or take his share.' (Abb. Law Dict.)

"Being the legal representatives of the defendant, the court was authorized, upon such terms as might be just, to relieve them from a default taken against him, through their mistake, inadventence, surprise, or excusable neglect.

"After transferring his entire  interest in the subject matter of the controversy, the defendant was only nominally a party to the action. The real parties in interest were his grantees. The entry of his default affected them, not him. It is the .duty of all courts to construe the provisions of the code 'liberally, with a view to effect its objects and to promote justice.   *   *   *   ' "

And in the case of *People v. Mullan,* 65 Cal. 396, also reported in 4 Pac. 348, the same court say:

"The motion to set aside the judgment is a direct and not a collateral attack. The moving party offered to show that there was no service of summons on Mullan. The service purported to be by publication, and the specific offer was to show that no affidavit for publication of summons was ever made, and that there was no order made authorizing such publication. On objection by plaintiff the offer was rejected, and an exception was reserved. The judgment, if rendered

as offered to be shown, was void. If Mullan was the mover, such ruling would undoubtedly be error: He would be entitled to show that the judgment was entered without authority of law. The motion is made by the Cucamunga Company, a corporation to which the land involved in the action had been conveyed, and a certificate of purchase therefor assigned by Mullan on the twentieth of October, 1881. This was after the judgment attacked had been entered, which was on the fourth day of January; 1881. But we regard the corporation as in legal effect the assignee and legal representative of Mullan, and standing in his shoes. We think the motion was well made. The company could have moved in the name of Mullan, and it has substantially done this. We should be sacrificing form to substance, to hold otherwise."

Counsel for defendant in error cite us in support of their position to the case of *Satterlee v. Grubb,* 38 Kan. 237, also reported in 16 Pac. 475. But an examination of that case will show that the only point decided therein was that all the proceedings, including the notice, must be within three years, and as those proceedings were not all commenced within three years, the application was denied; hence it is not in point in this case. They also cite the case of *Durham v. Moore,* 48 Kans. 136, also reported in the 29th Pac. 472. In that case it was held that the petition was insufficient, as it did not show that the defendants in the original action and the parties making application to open the judgment, had a meritorious defense to the original action, and in this it differs from the case at bar. We think this petition to open the judgment, and for leave to defend, containing as it does, the names of all the defendants in the original suit, and the name of the person who purchased their interest therein, certainly had the proper parties to entitle them to make the application.

The only remaining question is, does the record show a compliance with the requirements in the statute? What are they? The applicant must show that he has given the notice required. (Record, page 9, shows that this was done.) He must offer to pay all costs if the court shall require it. (This is shown on page 7 of the transcript.) He must also show that he had no actual notice of the pendency of the original suit. (This appears by the affidavit of Nellie Brown, page 10 of the transcript, and the affidavit of D. G. Tutt, page 11 of the transcript.) He must also file a full answer to the petition in the original action. The answer is as follows:

"In the District Court of Logan County, Oklahoma Territory.

"*Mary Massey, Plaintiff, v. Nellie Brown and D. G. Tutt, Defendants, and L. N. Beadles, as Successor in Interest to Defendants, Defendant.*

"ANSWER TO PETITION OF PLAINTIFFS.

"Come now the defendants and L. N. Beadles, successor in interest to defendants, permission of the court having been first obtained, and file their joint answer to the petition of the plaintiff in this cause and as matters of defense thereto, charge and allege facts as follows, to-wit:

"1st. These defendants and their successors in interest in and to the real estate involved in this action deny each and every material allegation of fact and conclusion of law contained in said petition, except those that may be hereinafter especially admitted.

"2nd. The defendants, Nellie Brown, D. G. Tutt and L. N. Beadles, admit that they have, hold and claim an adverse interest to plaintiff in lots numbered seven (7) and eight (8), in block numbered sixty-one (61), in that sub-

division of the city of Guthrie, Logan county, Oklahoma Territory, known as Capitol Hill.

"3rd.    The defendants, Nellie Brown and D. G. Tutt, at the time of the commencement of this action, and at the time of the issuance of the tax deed hereinafter referred to, and for a long time prior thereto, and at all times up to the date of filing the petition in this cause, were the absolute owners of the fee simple title to the above described real possessions.

"4th.    That thereafter on to-wit: the 14 and 15 days of May, A. D. 1902, these defendants for a valuable consideration sold and conveyed all of their said title to said real property to defendant, L. N. Beadles.

"5th.    That on to-wit: the· 7th day of September, A. D. 1894, the county treasurer of Logan county without authority of law, pretended to sell at tax sale the real estate involved in this action, for the alleged non-payment of taxes for the year A. D. 1893, at which time these defendants were the owners and in possession of said real estate, and said county treasurer did on said date make certificates of purchase to said property included to the county of Logan, Oklahoma Territory.    And thereafter said county treasurer .without any authority of law, on to-wit: the 10th day of May, A. D. 1898, pretended to resell said property for the sum of $15.85, the amount of charges, taxes, penalties and· costs alleged to be due and for which sum said property, together with other property described in said deed, was bid in by the county treasurer aforesaid, in the year A. D. 1894 aforesaid for the further sum of money alleged to be subsequent taxes accrued and due thereon.    While said property was held by the county of Logan under the sale aforesaid for the sum of $......, said treasurer did on the 10th day of May, A. D. 1898, again sell or pretended to sell said real estate with other real estate described in the deed to one S. S. Lawrence for the alleged sum of $52.00 cash; and did on the 13th day of May, A. D. 1898, execute and deliver to said S.

S. Lawrence a tax deed for said real property herein described, together with other property described in said deed. And said tax deed was by the said S. S. Lawrence placed on record on said last mentioned date. A certified copy of said tax deed is hereto attached, and made a part of this answer.

"6th.    That thereafter said S. S. Lawrence attempted to convey said property by deed to the plaintiff in this action, Mary Massey, and upon which several pretended and illegal conveyances she brings this suit and bases her claim to title to the real property herein described.

"7th.    That said tax deed upon which the claim of plaintiff is based was placed on record in Logan county, Oklahoma Territory, on the said 13th day of May, A. D. 1898, and during the whole of the intervening time between the recording of this deed and the filing of this action by plaintiff, on to-wit: the 28th day of January, A. D. 1902, these defendants were in possession of said real estate, and neither the purchaser at said pretended tax sale or his assigns, the plaintiff herein, never at any time brought suit for possession, or otherwise took possession of said real estate by reason of which this action is barred by the statutes of limitation of the Territory of Oklahoma, and said. tax deed by operation of said statute became null and void.

"8th.    That said tax deed upon which plaintiff herein claims title, is void upon its face for the following among other reasons:    Said tax deed recites only three certificates of purchase was issued by the treasurer of Logan county at said pretended sale for the following described property alleged to. have been sold to said county, to-wit: for lots number three (3). and four (4), in block number fifty-three (53), and lots number seven (7) and eight (8), in block number sixty-one ·(61), in the sub-division of the city of Guthrie, known as Capitol Hill.    And because said tax deed did not affirmatively show upon its face that said lots described therein were separately sold, and does not show for what sum said several lots separately sold for, and because

said deed. shows upon its face that said lots were collectively sold for the gross sum of $15.85, the amount of taxes due thereon, and because said deed does not recite that said lots were, prior to the sale thereof legally advertised for sale, for the period of time required by law. And because said deed does not recite that said property had been separately assessed and charged or extended as required by law. And because said tax deed shows upon its face that said property was sold for non-payment of taxes subsequent to the pretended sale to the county of Logan on the 7th day of September, 1894, and prior to the alleged re-sale in 1898, during which period said property was not taxable, and said sale therefore is contrary to law. That said tax deed and all proceedings prior to the issuance thereof are void for the following reasons: Because said property was sold for the non-payment of the following illegal taxes levied, assessed, charged and extended for the year 1893, to-wit, the following illegal levy: For county general purposes, including two (2) mills for the support of the poor and contingent expenses, six mills on the dollar valuation. For county road and bridge purposes, five (5) mills on the dollar valuation. For separate schools, one (1) mill on the dollar valuation, all of which levies of taxes for said year A. D. 1893 are illegal and void, and for the non-payment of said illegal taxes said property was sold, and for the reason that county clerk never certified said taxes down' to the treasurer of Logan county with his warrant to collect the same for the said year A. D. 1893.

"9th. That the defendants have tendered to plaintiff all taxes, penalties, interests, costs and charges due and accrued on said lots described in said tax deed but she fails and refuses to accept the same, and defendants now· tender into court for the use and· benefit of plaintiff for said taxes, interest, penalties, charges and costs.

"10th. Wherefore, defendants pray that the tax deed issued herein, and the conveyance thereon · from Lawrence to plaintiff, each be declared null and void, and that the title

·to said real estate be quieted in· these defendants, and for costs of suit and all proper relief.

"BUCKNER AND SONS,
"Attorneys for Defendants."

The tax deed on which the original action is based is as follows:

"TAX DEED.
"Filed for record May 13, 1898, at 1:30 P. M.
[SEAL]                        "J. J. NELSON,
"Recorder of Deeds.

"FERDINAND RITTERBUSCH, TO S. S. LAWRENCE.

"Whereas, the county of Logan did on ,the 10th day of May, 1898, produce to the undersigned Ferdinand Ritterbusch, treasurer of the county of Logan, in the Territory of Oklahoma, three certificates of purchase in writing bearing date the 7th day of September, 1894, signed by Joseph Stiles, who at the last mentioned date was treasurer of said county, from which it appears that at a tax sale made under the laws of this territory on the 7th day of September, 1894, at the treasurer's office of said Logan county, the tracts, parcels or lots of land lastly in this indenture described were offered for sale separately at public· auction, and as no other bidders offering the amount due therein, the same were then and there bid off in the name of the county of Logan, by said county treasurer, Joseph Stiles, for the sum of $15.85, being the amount due on the following tracts or lots of land returned delinquent for non-payment of taxes, costs and charges for the year 1893, to-wit: Lots three (3) and four (4), in block fifty-three (53), and lots seven (7) and eight (8), in block sixty-one (61) in that subdivision of the city of Guthrie known as Capitol Hill, in said Logan county, and it appearing that the county of Logan is the legal owner of said certificates of purchase, and the time fixed by law for redeeming the lands therein described having now expired and the same not having been redeemed as provided by law, and which was the

least quantity of the tracts above described that would sell as aforesaid for the amount due thereon for taxes, costs and charges as above specified, and it appearing that said lands were legally liable for taxation and had been duly assessed and properly charged on the tax book or duplicate for the year 1893, and that said lands had been legally advertised for sale of said taxes, and were bid off in the name of the county of Logan, as aforesaid on the 7th day of September, 1894. And where said lands remained unredeemed for three years, from the date of said sale and no person having offered to purchase the same or any or either of them for the taxes, penalties and costs due thereon.   The said Ferdinand Ritterbusch, county treasurer as aforesaid, gave notice of the sale of such real estate at his office in said Logan county, at public auction for cash to the highest bidder between the hours of 1 o'clock and four o'clock P. M., on the 10th day of May, 1898, which notice was given by publication thereof, once a week for four consecutive weeks preceding said dates fixed for said sale in the Oklahoma State Capital, a newspaper printed and published in Guthrie, in said Logan county and of general circulation therein, which notice of sale contained a description of the real estate, to be sold, and included the real estate above described, the time and place of the sale and a statement of the date on which said real estate was sold as aforesaid to the county of Logan for delinquent taxes, and that the same has not been redeemed for the period of three years from the date of such sale and the amount of taxes, costs, penalties and interest accrued on the same and that such real estate would be sold at public auction to the highest bidder for cash at such sale; and whereas, in pursuance of such notice, said county treasurer, Ferdinand Ritterbusch, did on the 10th day of May, 1898, at the time and place mentioned in said notice, offer for sale and sell separately the tracts or lots above described at public auction to S. S. Lawrence for the aggregate sum of fifty-two dollars cash, he being the highest and best bidder therefor at said sale.

"Now, therefore, this indenture made this 13th day of May, 1898, between the Territory of Oklahoma by Ferdinand Ritterbusch, the treasurer of said county of the first part, and the said S. S. Lawrence of the second part, Witnesseth: That the said party of the first part for and in consideration of the premises and the sum of one dollar in hand paid, hath granted, bargained and sold, and by these presents doth grant, bargain, sell and convey to the said party of the second part, his heirs and assigns, forever, the tracts or parcels of land mentioned in said certificates and described as follows, to-wit: Lots three (3) and four (4) in block fifty-three (53) and lots seven (7) and eight (8) in block sixty-one (61) in that subdivision of the city of Guthrie known as Capitol Hill, in the county of Logan and Territory of Oklahoma, to have and to hold said mentioned tracts or parcels of land with the appurtenances thereunto belonging to the said party of the second part, his heirs and assigns forever, in as full and ample manner as the treasurer of said county is empowered by law to sell the same.

"In testimony whereof the said Ferdinand Ritterbusch, treasurer of said county of Logan, has hereunto set his hand and seal on the day and year aforesaid.

"FERDINAND RITTERBUSCH, County Treasurer.
"[SEAL.]"

"Territory of Oklahoma, County of Logan, ss.

"Before me, R. Emmett Stewart, a county clerk, in and for the above named county and territory, on this 13th day of May, 1898, personally appeared Ferdinand Ritterbusch, to me known to be the county treasurer of Logan county, and the identical person who executed the within and foregoing instrument and conveyance of land, and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

"Witness my hand and official seal the date above written.

"R. EMMETT STEWART, County Clerk.
"[SEAL.]"          "By N. J. C. JOHNSON, Dep.

"Territory of Oklahoma, County of Logan, ss.

"I, J. S. Mabon, register of deeds in and for the above named county and territory, do hereby certify that the within and foregoing writing, is a full, true and correct copy of the original instrument as recorded in my office.

"Witness my hand and official seal on this 26th day of July, 1902:

"J. S. Mabon, Register of Deeds.

"By H. A. Herwig, Dep."

"[seal.]"

One of the recitals of this deed is: "Whereas the county of Logan did on the 10th day of May, 1898, produce to the undersigned, Ferdinand Ritterbusch, treasurer of the county of Logan, in the territory of Oklahoma, three certificates of purchase * * * * * * for lots three and four in block fifty-three, and lots 7 and 8 in block sixty-one."

It has been held by this court wherein the same form of deed is involved, that where the sale was made to the county, and where the deed showed upon its face that there was not a separate certificate of purchase for each lot conveyed by the deed, that the deed was void on its face. In this case we have three certificates of purchase, and four lots conveyed. This court in the case of *Weeks v. Merkle,* 6 Okla, 719 and 720, say:

"It appears, also, from the recitals of the deed, that all of the parcels conveyed were at the time of the sale for the delinquent taxes purchased by the county treasurer for the county; and in such case section 21, ch. 70, p. 1055, provides, that, 'whenever the county treasurer of any county shall bid off any real estate in the name of the county, he shall make out a certificate of purchase to said county, just as he is required to do if the sale had been made to any other person, but he shall retain the same in his office, until transferred, as provided in sec. 20.' And by the section referred to provi-

sion is made whereby any person may purchase the interests of the county by paying to the county treasurer the amount of taxes, penalty, and interest, and 'thereupon the said treasurer shall, and it is hereby made his duty, to assign and deliver to the purchaser the certificate of purchase held by said county for said real estate.' The language of these two sections evidently contemplates a separate certificate by the county treasurer for separately listed tracts, and that such original certificate shall be assigned when a purchase is made by an individual; in this way preventing more than one certificate for the same parcel. It seems clear that in respect to purchases made by an individual, and the county treasurer in behalf of the county, a different rule must obtain relative to the number of tracts or parcels which may be placed in one certificate; that when the purchase is made by an individual, at a delinquent tax sale, of a number of separately listed tracts, he may have as many of such tracts placed in one certificate as he desires. But when such purchase is made by the county treasurer, he must make a separate certificate for each purchase. We can interpret the different provisions upon this subject of our revenue statute in no other manner, and give effect to all of them. The county treasurer not being permitted to make a new certificate to an individual for tracts purchased by the county treasurer, it therefore follows that the certificate assigned by the county treasurer was invalid upon its face, as it purported to convey separately listed property, and property not contiguous, in the one instrument; thereby, we think, fairly showing that the sale to the county was illegally held."

It is alleged in the answer that the tax deed does not show on its face that the property was separately listed, assessed, and sold as required by law. If this allegation should be maintained by the proof, it would make the tax deed void under the doctrine laid down in the case of *Weeks v. Merkle.* It is further alleged in the answer that this land

was sold for illegal taxes, and for a sum in excess of the legal taxes, and therefore was void, which is held to make a tax deed void in the case of *Herzogg v. Gregg,* 23 Kans. 727. The tax deed shows on its face also that all of the property was sold collectively, and for a gross sum of money, which would be a violation of the doctrine in *Weeks v. Merkle.* The tax deed further shows, and this allegation is made in the answer of the defendants, and the tax deed is made an exhibit and asked to be made a part of the answer, that the tax deed shows on its face that the property was taxed by the county while it held the certificate of purchase, and that such property was sold for these taxes, which would certainly be illegal, for the reason that the county could not tax its own property, and after levying such a tax sell it for the tax so placed upon it.

For the reasons herein expressed, we think the order and judgment of the district court in refusing to reopen the judgment and permit the defendants to defend against the original action of *Massey v. Brown and Tutt* was erroneous, and for this reason the case is reversed and remanded to the district court, with instructions to open the judgment and allow the plaintiffs in error to defend. Costs of this appeal taxed to defendant in error.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.