UNITED STATES *v.* ZUCCA & CO. (2122).[1]

COUNSEL'S CONTROL OF LITIGATION.

.In accordance with the general rule that an attorney may confess judgment, or consent to a decree against his client, or compromise where there is nothing apparent of imposition, unfairness, or dishonesty, the importers' counsel in this case had authority to enter into an agreement or stipulation for the overruling of his protest as to certain entries. Subsection 30 of section 28 of the tariff act of 1909, creating the office of the Assistant Attorney General in charge of customs litigation, confers upon him similar authority. It follows that a stipulation between the counsel for the importers and the Assistant Attorney General that a protest be sustained in part and overruled in part is valid and binding upon the Board of United States General Appraisers.

United States Court of Customs Appeals, December 14, 1921.

APPEAL from Board of United States General Appraisers, G. A. 8444 (T. D. 38757).

[Reversed.]

*Wm. W. Hoppin,* Assistant Attorney General (*Pelham St. George Bissell,* special attorney, of counsel), for the United States.
*Finkler & McEntire* for appellees.

[Oral argument Oct. 29, 1921, by Mr. Hoppin.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

DE VRIES, Presiding Judge, delivered the opinion of the court:

The sole question involved in this appeal is one of law, and concerns the power of the Assistant Attorney General in charge of customs cases and counsel for protestants to enter into a stipulation that a protest may be sustained or overruled.

Zucca & Co., of New York, duly filed a protest against the decision of the collector of customs at the port of New York assessing additional duties upon certain importations of that firm upon the ground

---

[1] T. D. 38959.

of fraud. The entries had originally been liquidated at stated sums, and thereafter upon the ground of claimed fraud, upon part of the weighers at least, reliquidation of the entries was had and additional duties assessed by the collector. Protest was duly filed by Zucca & Co., which was overruled by the collector, duly transmitted to and decided by the Board of General Appraisers and, upon appeal, by this court. The case was thereafter remanded for further proceedings in accordance with the opinion of this court and accordingly set for retrial before the Board of General Appraisers. Thereupon counsel for the importers and the Assistant Attorney General duly executed and presented to the appropriate board a stipulation, in words and figures, as follows:

STIPULATION OF COUNSEL.

Board of United States General Appraisers, Board 3.

In the matter of protest 610720–61167 of Zucca & Co.

It is hereby stipulated by and between the attorneys for protestant and the Assistant Attorney General, as follows:

(1) On behalf of the Government, that the protest may be sustained so far as it relates to entries 218241, 273600, and 160687.

(2) On behalf of the protestant, that the protest may be overruled so far as it relates to entries other than those hereinbefore enumerated.

(3) That the above-enumerated protest be, and hereby is, submitted for decision upon this stipulation and the papers of record herein.

Dated New York, N. Y., February 9, 1921.

KAUFFMAN, HERZBERG & FINKLER,
*Attorneys for Protestant.*
FRANK I. FINKLER,
*Of Counsel for Protestant.*
BERT HANSON,
*Assistant Attorney General.*

It will be observed that the effect of the stipulation was that judgment be entered against the United States in three of the entries for the refund of the additional duties assessed, and that as to the other entries judgment be entered against the importers by an overruling of their protest as to those entries.

The Board of General Appraisers in a majority opinion held that the Assistant Attorney General had not the power to stipulate the judgment in question against the United States as to the three entries, and, perhaps of less importance, indicated that counsel for the importers had not the power to stipulate that the protest as to the remaining entries be overruled in that, as was claimed by the majority of the board but disputed by the importers' counsel, it involved a finding against their client, Zucca & Co., of fraud.

The substantial and only question properly before the board and this court is the legal power of counsel for the importers and the Assistant Attorney General to make the stipulation in question and the effect thereof when made. That counsel for a litigant has the

power to enter into a stipulation affecting his client's interest, whether it be a matter of dismissal, consent judgment, or compromise, is by the courts too well settled to become the subject of extended consideration. The general rule in such cases is set forth in the Encyclopedia of United States Supreme Court Reports, Volume II, pages 713 and 714, as follows:

An attorney may confess judgment, or consent to a decree against his client.

* * * Although an attorney at law, merely as such, has, strictly speaking, no right to make a compromise, yet a court will be disinclined to disturb one which is not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed upon or not fairly exercised in the case.

This text is amply supported by numerous decisions of the State and Federal courts. In this case the record shows no question made as to the circumstances surrounding the stipulation or as to its infirmity, inequality, or inadvisability. There is nothing in the record that shows or intimates fraud or other circumstances mitigating against the fairness or advisability of the stipulation. It, therefore, stands prima facia, at least, as binding.

Whether or not the Assistant Attorney General, whose action is the subject here of review, has that power is a question which merits consideration. The office of the particular Assistant Attorney General who signed the stipulation herein was created by subsection 30 of section 28 of the tariff act of 1909 amending the customs administrative act. That subsection reads:

SEC. 30. That there shall be appointed by the President, by and with the advice and consent of the Senate, an Assistant Attorney-General, who shall exercise the functions of his office *under the supervision and control of the Attorney-General* of the United States, and who shall be paid a salary of ten thousand dollars per annum; and there shall also be appointed by the Attorney-General of the United States a Deputy Assistant Attorney-General, who shall be paid a salary of seven thousand five hundred dollars per annum, and four attorneys, who shall be paid salaries of five thousand dollars per annum each. Said attorneys shall act under the immediate direction of said Assistant Attorney-General, or, in case of his absence or a vacancy in his office, under the direction of said Deputy Assistant Attorney-General, and said Assistant Attorney-General, Deputy Assistant Attorney-General, and attorneys *shall have charge of the interests of the Government in all matters of reappraisement and classification of imported goods and of all litigation incident thereto,* and shall *represent* the Government in all the courts and before all tribunals wherein the interests of the Government require *such representation.* [Italics ours.]

It is important to note that the provision of law creating that office was a part of a law which, according to the procedure therein prescribed, permitted certain persons, to wit, those importing merchandise into the United States, to sue the United States for return of moneys alleged to be illegally paid as customs duties or penalties. The statute itself, therefore, puts out of the question whether or not the particular litigant had a right to sue and obtain judgment against .

the United States, for that right is by that act granted by the Congress, and the office of the particular Assistant Attorney General created thereby and authorized to have charge of, direct, and conduct upon behalf of the United States the litigation attendant upon such cases. The power given is a broad one, that said Assistant Attorney General and other assistants provided for "shall *represent* the Government in all the courts and before all tribunals wherein the interests of the Government require *such representation.*" It is, however, provided by that statute (subsec. .30) that the representation therein authorized and enjoined upon the Assistant Attorney General and his assistants "shall exercise the functions of his office under the supervision and control of the Attorney General of the United States." The section, it will be noted, also provides that the Attorney General may appoint additional special attorneys to assist the said Assistant Attorney General "in the conduct of customs cases * * * and shall have supervision of their conduct and proceedings." The provision is peculiar. It seems, however, that the officials therein created act more in the nature of assistants to the Attorney General than as the United States district attorneys otherwise created, whose offices are perforce of their creation more independent of the Attorney General than this office nevertheless subject in all cases to the direction and control of the Attorney General. It would seem, however, that this particular Assistant Attorney General stands in the same relation to the Attorney General as do other assistants authorized by law and appointed by him, the particular Assistant Attorney General having the distinction, alone of all assistants, of being specially authorized by statute to perform certain designated duties as such assistant, subject to the control and direction, however, of the Attorney General therein prescribed. It will be particularly noted, however, that the powers of the particular Assistant Attorney General over the particular class of claims against the Government is by the especial statute made complete, to wit, that he and his assistants "shall have charge of the interests of the Government in all matters of reappraisement and classification of imported goods and of all litigation incident thereto, and shall *represent* the Government in all the courts and before all tribunals wherein the interests of the Government require such *representation.*" This is a broad and complete grant of power. It is difficult to understand how if particular counsel is fully empowered to "represent" the Government in all courts and before all tribunals "wherein the interests of the Government require such representation" he is not fully empowered to so conduct such litigation as to his judgment seems meet and proper subject to the power of the Attorney General, who supervises his conduct and proceedings.

Indeed, the statutory authority of action by the particular Assistant Attorney General is broader than that of the Attorney General him-

self. The express statutory authority prescribing the duties and powers of the Attorney General are indeed more narrow than this statute. For an elaborate review of those statutes and the respective authorities of the Attorney General and United States attorneys, see United States *v.* Rosenthal (121 Fed., 862, 865, et seq.).

The particular statute, subsection 30, vests in the particular Assistant Attorney General an unlimited and unqualified power to "represent" the United States before all tribunals in all import customs cases of appraisement and classification, of which this is one. To "represent" in a legal proceeding has been adjudicated by the courts. Thus in Plummer *v.* Brown (1 Pac. Rep., 703; 64 Cal., 429), it is defined:

> To represent a person is to stand in his place, to act his part, exercise his right, or take his share.

That definition is taken from Abbott's Law Dictionary.

In Brown *v.* Massey (76 Pac. Rep., 226; 13 Okla., 670), the Supreme Court of Oklahoma rendered the same definition.

In Carpenter et al. *v.* Superior Court of San Joaquin County (19 Pac. Rep., 174), the Supreme Court of California construed the word "represent," included in the code of that State with reference to an infant, saying:

> The thing which a guardian ad litem is appointed to do is to "represent" the infant in the action or proceeding. (Code Civil Proc., sec. 372), by which we understand that he is to conduct and control the proceedings on behalf of the infant.

The Supreme Court of Illinois in City of Chicago *v.* Sherwood et al. (104 Ill., 549, 554), in defining the term in a public contract "representatives of property," said:

> "Representative," we must therefore assume, means, legally, and when here used was intended to mean, what the term imports—that is, one having lawful authority to act in behalf of the property and bind the owner in regard thereto. * * *

In 34 Cyclopedia of Law and Procedure, pages 1620, 1621, is set forth the powers which may be exercised by one made the "representative" of another. Therein it is stated that such is:

> One having legal authority to act in behalf of the property and bind the owner with reference thereto; * * * one who occupies another's place, and succeeds to his rights and liabilities; one who represents or is in the place of another; one who represents or stands in place of another; * * *

From the foregoing it will appear that to represent one unqualifiedly the representative stands in the place of, armed and equipped with all the powers, qualified to perform and do all the things that the person or thing represented is empowered by law to do.

There can be no question with the Government it is an inherent power to confess a judgment in a claims case. That is so obvious that it seems trite to make the statement. If, therefore, the particular Assistant Attorney General is authorized and empowered by

Congress to unqualifiedly "represent" the Government that unlimited investment of power qualifies the particular Assistant Attorney General to do all things that the principal might do in the particular classes of cases, included within which obviously is the power to dismiss a particular action, to confess judgment in a particular case, or to compromise a particular proceeding.

The instance here in question of the exercise by the Attorney General of the power of in effect stipulating a judgment against the United States in a case involving property thereof is the Confiscation Cases (7 Wall., 74 U. S., 454, 456, et seq.). Therein it will be particularly noted that a judgment had been obtained by the United States. On appeal the Attorney General stipulated that the appeal should be dismissed and made a motion in accordance therewith. The Supreme Court said:

> Early in the present term some of the cases were heard upon the merits; but these cases now come before the court on certain motions made in behalf of the United States by the Attorney General. His motion in the first case is for leave to dismiss the libel of information; and in the second case, his proposition is to the effect that the decree of the Circuit Court, which was in favor of the United States, shall be reversed, and the cause remanded, with a view that the same may be dismissed in the court where the suit was instituted. When the motions were made they were taken under advisement; but the court subsequently decided that the motions ought to be granted, unless the informer desired to be heard in opposition to the discontinuance of the prosecutions. Since that time the informer has been heard, and the court has come to the conclusion that the respective motions must be granted.
>
>    *       *       *       *       *       *       *
>
> In the prosecution of suits in the name and for the benefit of the United States, the seventh section of the act of the 15th of May, 1820, provided that the district attorneys should conform to such directions and instructions as they should receive from the agent of the Treasury; but the first section of the act of the 2d of August, 1861, devolves the general superintendence and direction of district attorneys, as to the manner of discharging their respective duties, upon the Attorney General of the United States.
>
>    *      *       *       *       *       *       *
>
> Civil suits, in the name and for the benefit of the United States, are also instituted by the district attorneys, and, *in the absence of any directions from the Attorney General*, he controls the prosecution of the same in the district and circuit courts, and may, if he sees fit, allow the plaintiffs to become nonsuit, or consent to a discontinuance.
>
>    *      *       *       *       *       *       *
>
> Control of these suits, therefore, while they were pending in the Circuit Court belonged to the district attorney *under the general superintendence and direction of the Attorney General*, and he might, if he had seen fit, *have discontinued them at any stage of the proceedings prior to the appeals*. * * * Appointed, as the Attorney General is, in pursuance of an act of Congress, to prosecute and conduct such suits, argument would seem to be unnecessary to prove his authority *to dispose of these cases in the manner proposed in the respective motions* under consideration, but if more be needed, it will be found in the case of *The Gray Jacket*, in which this court decided that in such suits no counsel will be heard for the United States in opposition to the views of the Attorney General, not even when employed in behalf of another of the executive departments of the Government.
>
> Whether tested, therefore, by the requirements of the judiciary act or by the usage of the Government, or by the decisions of this court, it is clear that all such suits,

so far as the interests of the United States are concerned, are subject to the direction, and within the control of, the Attorney General. [Italics ours.]

In *The Gray Jacket* (5 Wall., 72 U. S., 370, 371) the sole question decided, being a preliminary one to the trial of the case upon its merits, was the power of the Attorney General over cases within his jurisdiction. Therein the Supreme Court said:

The Chief Justice delivered the opinion of the court on this point:

The court has considered the question whether counsel shall be heard in this cause on behalf of the Treasury Department, and has instructed me to say that in causes where the United States is a party, and is represented by the Attorney General or the Assistant Attorney General, or special counsel employed by the Attorney General, no counsel can be heard in opposition on behalf of any other of the departments of the Government.

The leading case upon the subject of the power of an attorney to compromise a case and enter into a stipulation to that effect is the Pacific R. R. *v.* Ketchum (101 U. S., 289, 296). The stipulation therein entered into by the solicitor for the railroad was that a foreclosure judgment might be taken in the case. The Supreme Court in subsequently frequently quoted language says:

A solicitor may certainly consent to whatever his client authorizes, and in this case it distinctly appears of record that the company assented through its solicitor. This is equivalent to a direct finding by the court as a fact that the solicitor had authority to do what he did, and binds us on an appeal so far as the question is one of fact only. The remedy for the fraud or unauthorized conduct of a solicitor, or the officers of the corporation in such a matter is by an appropriate proceeding in the court where the consent was received and acted on, and in which proof may be taken and the facts ascertained.

See also Re Metropolitan Railway Receivership (208 U. S., 90, 108); United States *v.* San Jacinto Tin Co. (125 U. S., 273, 279, et seq.); Prout *v.* Starr (188 U. S., 537, 542); United States *v.* Babbitt (104 U. S., 767, 768).

The case of United States *v.* Babbitt, supra, is particularly and precisely in point. Under the provisions of section 7 of the act of June 18, 1878 (20 Stat., 145), Babbitt brought suit against the United States for certain claimed pay due as a cadet at West Point. The question was whether or not in the question of longevity within that statute pay for an officer of the Army of the United States under that act his services. as a cadet at West Point could be taken into account. The court decided below that it could not. The record, however, showed that the Attorney General, after decision was announced by the court, consented to a pro forma judgment against the United States in favor of the claimant. Upon the authority of Pacific R. R. *v.* Ketchum (101 U. S., 289), the Supreme Court of the United States held that the consent of the Attorney General to the judgment against the United States in favor of this claimant was binding upon the United States. The case is important as controlling the issue in this case. It is an express instance where the

Attorney General acting under his general powers consented to a judgment against the United States which otherwise would be against the claimant. Furthermore, it was an authority that the powers of the Attorney General in confessing judgment against the United States are similar to the powers of attorneys in civil actions.

To the same effect is Thompson *v.* Maxwell Land Grant Co. (168 U. S., 451, 463). Therein the Supreme Court quoted with approval the opinion of the Supreme Court of Massachusetts, as follows:

> An infant is ordinarily bound by acts done in good faith by his solicitor or counsel in the course of the suit, to the same extent as a person of full age.—Tillotson *v.* Hargrave (3 Madd., 494); Levy *v.* Levy (3 Madd., 245). And a compromise appearing to the court to be for the benefit of an infant, will be confirmed without a reference to a master; and, if sanctioned by the court, cannot be afterwards set aside except for fraud.—Lippiat *v.* Holley (1 Beav., 423); Brooke *v.* Mostyn (33 Beav., 457, and 2 De G., J. & S., 373).
>
> If the court does pronounce a decree against an infant by consent, and without inquiry whether it will be for his benefit, he is as much bound by the decree as if there had been a reference to a master and a report by him that it was for the benefit of the infant.—Wall *v.* Bushby (1 Bro. Ch., 484; 1 Dan. Ch. Prac., 164). *The case falls within the general rule, that a decree made by consent of counsel, without fraud or collusion, cannot be set aside by rehearing, appeal or review.*—Webb *v.* Webb (3 Swanst., 658); Harrison *v.* Rumsey (2 Ves. Sen., 488); Bradish *v.* Gee (Ambl., 229; S. C. 1 Keny., 73); Downing *v.* Cage (1 Eq. Cas. Ab., 165); Toder *v.* Sansam (1 Bro. P. C. (2d ed.), 468); French *v.* Shotwell (5 Johns. Ch., 555).

See also Hackfeld & Co. *v.* United States (197 U. S., 442, 446).

The court is, therefore, of the opinion that the stipulation entered into was valid and binding upon the United States, and that the Assistant Attorney General in charge of customs acted fully within the authority legally conferred upon him and within his powers as such Assistant Attorney General.

*Reversed.*