## SALOMON & CO. *v.* UNITED STATES (No. 1626).[1]

STIPULATIONS OF FACT AND OF LAW, EFFECT OF.

Only the parties are interested in the *facts* of a case, and their agreed statement of them concludes the court. The public also is interested in the *law*, and their agreed statement of it would not conclude the court.

### United States Court of Customs Appeals, March 9, 1916.

APPEAL from Board of United States General Appraisers, Abstract 38109.

[Reversed.]

*Comstock & Washburn (Albert H. Washburn* and *J. Stuart Tompkins* of counsel) for appellants.
*Bert Hanson,* Assistant Attorney General, for the United States.

[Oral argument Feb. 8, 1916, by Mr. Washburn and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

In this case the following stipulation was made and submitted to the Board of General Appraisers at or before the hearing of the protest by that tribunal, and is before us:

It is hereby stipulated and agreed by and between counsel for the importers and Assistant Attorney General for the United States that the protest above named covers wood pulp—

(A) Produced in and exported directly to the United States from a nation or country with which the United States had at the time of exportation and entry a treaty of amity and commerce containing favored-nation provisions, and that such exportation was made directly to the United States from the nation or country of production or manufacture via one foreign port or place.

That said pulp was—

(B) Made out of wood grown in the country of production.

(C) That no export duty, export license fee, or other export charge of any kind whatsoever (whether in the form of additional charge or license fee or otherwise) has been imposed upon said wood pulp; nor has any prohibition or restriction in any way of the exportation (whether by law, order, regulation, contractual relation, or otherwise, directly or indirectly) been imposed upon said wood pulp or wood, or wood pulp or wood of like character.

(D) That except as noted in paragraph A of this stipulation said wood pulp is of the same character for tariff purposes as that covered by suit 894, American Express Co. *et al. v.* United States, and suit 895, F. Bertuch & Co. *et al. v.* United States (4 Ct. Cust. Appls., 146; T. D. 33434).

---

[1] Reported in T. D. 36255 (30 Treas. Dec., 458).

It is further stipulated and agreed that this protest is limited in its application to 800 bales of Swedish unbleached wood pulp marked "Sweden," under invoice of Hugo Harting, dated April 3, 1913.

Said protest 701836 is submitted for decision under this stipulation.

COMSTOCK & WASHBURN,
*Attorneys for Importers.*

BERT HANSON,
*Assistant Attorney General, for the United States.*

Dated April 17, 1915.

No evidence was offered by either party.

Duty had been assessed under paragraph 406 of the tariff act of 1909, and in the protest free entry was claimed by virtue of the most-favored-nation clause in existing treaties between the United States and Sweden and the United States and Sweden and Norway, in conjunction with section 2 of the act of July 26, 1911, which, among other things, provides that wood pulp, in order to be entitled to free entry thereunder, must be the product of Canada and imported directly therefrom into the United States.

As appears from its opinion, the board did not regard as conclusive the provision of the stipulation that the importation was made directly to the United States from the nation or country of production or manufacture via one foreign port or place, but examined the invoice, the material part of which, as stated by the board, is as follows:

HAMBURG, *April 3, 1913.*

Invoice of 2,000 bales of wood pulp, * * * purchased by Messrs. Felix Solomon & Co. * * * of New York * * * from * * * Hugo Hartig * * * of Hamburg * * * to be shipped per steamship *Hannover* via Hamburg to Portland, Me. * * *

Sweden.

5 HH 800 bales of Swedish unbleached sulphate wood pulp kg. 101600....M 15.15240

It then proceeded to the following decision:

From the invoice it will be seen that the consignor is a merchant of Germany, and that the merchandise itself is a product of Sweden. It therefore appears that the merchandise in question was produced in Sweden, shipped from there to Germany, and from Bremen, Germany, consigned to the importer at the port of Portland, Me. The merchandise was not imported from the country of production "directly into the United States," but entered into and became a part of the commerce of Germany. See United Cigar Stores Co.'s case, G. A. 7026 (T. D. 30643). The protest is overruled.

BYRON S. WAITE,
EUGENE G. HAY,
*Board of United States General Appraisers.*

Thereupon the importers duly applied for a rehearing, stating in their application that the law was well settled that "transshipment of merchandise in one country does not prevent it from being imported from some other country directly into the United States." In support of that proposition United States *v.* United Cigar Stores

Co. (1 Ct. Cust. Appls., 450; T. D. 31505) was cited and it was averred that the stipulated facts brought the case within that holding. To the petition a through bill of lading was annexed accompanied by an affidavit, both of which in one view tended to support the stipulation and were annexed and referred to in the petition for the purpose, as it was in substance said, of showing that the stipulation was warranted and the board in error. Thereupon the Government, by its present Assistant Attorney General, in its consent in writing filed with the board, among other things stated: "We not only consent to such rehearing, but we join in the importers' request," closing the same with the following: "To the end that absolute justice may be done, the Government asks that the matter be reopened in order that the importers may put before the board all of the facts."

Thereafter the following decision upon the petition for rehearing was entered:

The board having considered the application of the protestants, made through their attorneys, for a rehearing in the above entitled case, the same is hereby denied.

The importers appealed upon the merits, and in substance here claim that the stipulated facts are conclusive in their favor, and that the board was bound thereby.

The Government in its brief, while suggesting that if the board had had nothing before it but the invoice it would have been justified in its conclusion, frankly states that it does not ask that its decision be affirmed because to do so would be a repudiation of the stipulation. It also concedes that the importers relied upon the stipulation before the board, as they had a right to do, and offered no evidence; that it was and is conclusive of the facts; that the invoice should not be weighed against it; that it was not necessary to submit to the board the question of whether the Government was justified in making the concession; and that it might be said there was a presumption that a representative of the Government had investigated the facts and had learned that there was a direct shipment before the stipulation was entered into.

The Government further cites authorities to the effect that this stipulation upon the facts acts as an estoppel upon the parties thereto and is conclusive of all matters included therein and closes its brief by expressly saying that the "Government can not now and does not ask that the decision of the Board of General Appraisers be affirmed."

Other than as we have set forth the board presents no reasoning upon which its decision is based.

We are clear that the board erred in failing to take the stipulation as conclusive upon the relevant facts therein set forth, notwithstanding some apparently inconsistent inferences might be drawn from the invoice. The proper representative of the Government must have

been satisfied (because there is no suggestion that he has been deceived) that the *facts*, as set forth in the stipulation, were such as could be proven and the board was concluded thereby equally as if they had been proven.    It would be a strange thing if litigants or their accredited representatives could not get together and settle for themselves and the court what were the relevant facts touching the litigated issues.    Time and expense of parties as well as the court are often thereby saved and a speedy determination of the issue facilitated. The right to do this, however, must not be confounded with an attempt to stipulate as to the law.    This is a matter ordinarily for the court's determination and is not a proper subject for agreement, although it often happens that there is no disagreement as to what the law may be.    If it were undertaken, for instance, to stipulate that an agreed statute should receive a stated interpretation it is at once manifest that such a stipulation could not control the court, whose function is to determine for itself that particular thing.    The difference in the two instances is that the *parties* only are interested in the facts in issue between them, while the *public* is interested in the interpretation of the statute.    For a sufficient discussion of the effect of stipulations see 36 CYC, 1279–1298.

The Government's attitude in this case is commendable.    Upon the stipulated facts and upon the authority of the cases therein referred to the judgment of the Board of General Appraisers is *reversed*.