JULIUS FORSTMANN & CO. *v.* UNITED STATES (No. 4157)[1]

United States Court of Customs and Patent Appeals, February 6, 1939

*Allan R. Brown* (*Eugene F. Blauvelt* of counsel) for appellant.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Richard H. Welsh,* special attorney, of counsel), for the United States.

[1] C. A. D. 37.

[Oral argument October 6, 1938, by Mr. Blauvelt and Mr. Welsh]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This appeal concerns the proper classification of certain machines held by the collector at the port of New York to be dutiable at 40 per centum ad valorem as textile machinery, not specially provided for, under paragraph 372 of the Tariff Act of 1930.

The importer protested against the classification, claiming the machines to be dutiable at 35 per centum ad valorem as "articles having as an essential feature an electrical element or device" under paragraph 353 of the Tariff Act of 1930, or at 27½ per centum ad valorem as machines not specially provided for, or at 30 per centum ad valorem under paragraph 372, *supra.* No testimony was offered by the importer in support of his contention that the merchandise was dutiable at 27½ or 30 per centum ad valorem under paragraph 372, *supra.*

The pertinent provisions of the said paragraphs are:

PAR. 372. * * *; all other textile machinery, finished or unfinished, not specially provided for, 40 per centum ad valorem.

PAR. 353. * * *

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

. all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

The entire evidentiary record of the case consists of the following stipulation:

It is stipulated and agreed between counsel that the merchandise covered by this protest consists of one wet decatizing machine, two double nap raising machines, and two cloth tentering machines.

It is further stipulated that for the purposes of this case it is agreed that the foregoing machines are textile machines within the provision of paragraph 372 of the tariff act of 1930, reading, "all other textile machinery, finished or unfinished, not specially provided for," but are not knitting, braiding, lace-braiding, or insulating machines, or similar machines.

It is further stipulated that the machines covered by this protest are articles having as an essential feature an electrical element or device within the description in paragraph 353 of the tariff act of 1930.

And it is further stipulated that all the machines covered by this protest are composed in chief value of metal.

The United States Customs Court, Second Division, overruled the claims of the importer and held that the machines were more specifically classifiable as textile machinery, not specially provided for, under said paragraph 372 as classified by the collector, than as articles having as an essential feature an electrical element or device. Appeal was taken from the judgment.

We are of opinion that the said stipulation is defective in that it is essentially one of law rather than of fact; that it usurps the judicial function of the court in attempting to bind it to a conclusion of law and precludes it from judging the case on its merits.

To determine the difference between law and fact, at times, is not an easy task. The issue may be, in large part, metaphysical, its concept abstract, and to draw a precise line between the two for every case well nigh impossible. Many times questions of fact are so inextricably woven in with questions of law that separation is most difficult. Distinctions must be drawn, however, if the courts are to preserve their judicial function.

The question of stipulations of law and fact and their effect has been before the courts innumerable times. *Swift & Co.* v. *Hocking Valley Ry. Co.*, 243 U. S. 281; *Bear River Paper & Bag Co.* v. *City of Petoskey*, 241 Fed. Rep. 51; *In re Gubelman*, 10 F. (2d) 926; *United States* v. *A. W. Fenton Co.*, 16 Ct. Cust. Appls. 418, T. D. 43134; *North American Mercantile Co.* v. *United States*, 18 C. C. P. A. (Customs) 74, T. D. 44030; *Salomon & Co.* v. *United States*, 7 Ct. Cust. Appls. 5, T. D. 36255; *Whitacre, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 623, T. D. 47615. In no one of these cases, nor in the other cases weighed and considered after somewhat extensive research, were we able to find a complete and exhaustive study of the matter, nor a precise line of demarcation between law and fact. The difficulty, no doubt, is due to the fact that the distinction, at times, is so intangible that dogmatizing on the subject is a practical impossibility.

If, however, in attempting to stipulate facts, it is clear that litigants improperly circumscribe the freedom of the judicial function, it is elementary that such stipulations are not binding upon the court. This, we think, is the situation before us in the present appeal.

The basic facts here are that the merchandise "consists of one wet decatizing machine, two double nap raising machines, and two cloth tentering machines." An examination of the dictionary definitions of these terms convinces us that we cannot take judicial notice that the articles are textile machines in a tariff sense. In Knight's American Mechanical Dictionary we find the following definition of "tentering machine":

*Tentering Machine.* A machine for stretching fabric.

A New English Dictionary also defines "tentering":

*Tentering.* * * *; the stretching (of cloth) on tenters by means of other mechanical devices.

Funk & Wagnalls defines "tentering machine":

*Tentering Machine.*—A machine or frame for stretching cloth flat between hooks or by means of rollers.

We are unable to find the term "nap raising machines" in the dictionaries but we do find "napping machines" defined which, we presume, are similar to "nap raising machines." Funk & Wagnalls has the following:

Napping machine. 1. An apparatus for producing the nap in cloth, etc., especially the modern form, in which fine steel wires rotating on rollers take the place of teasals as distinguished from the older gig or gigging machine. 2. A machine for trimming nap.

"Decatize" is found in A New English Dictionary, Supplement (1933):

Decatize. To subject (woolen cloth) to the action of steam in order to give it a permanent lustre.

"Decatize" is also defined in Webster's New International Dictionary as:

Decatize. To remove the curl from (silk or wool yarn or fabric) by means of hot water or steam.

From these definitions we cannot determine whether or not the machines are textile machines in a tariff sense. This court has clearly limited the meaning of the term "textile machines." In *Passaic Worsted Co.* v. *United States*, 17 C. C. P. A. (Customs) 459, T. D. 43916, the test for textile machines, in a tariff sense, is laid down:

We thus expressed the opinion that the phrase "all other textile machinery" includes machines which are used in the *manufacture* of textile materials.

If this be the test, and we think it is, are the machines imported here used in the *manufacture* of textile materials?

But there is nothing in the dictionary definitions from which we can reasonably determine that these machines are used in the *manufacture* of textile materials. For all we know the tentering machines were to be used in an establishment that does not *manufacture* textile materials but merely stretches fabric that had been manufactured elsewhere. We have no evidence as to what a nap raising machine is and whether or not it is used in the manufacture of textile materials. Likewise, we are unable to determine from the definitions whether or not a wet decatizing machine is used in the process of manufacturing textile materials. It may be that it is used merely to lusterize cloth outside of a textile establishment. It is obvious then that we cannot take judicial notice that these machines are textile machines in a tariff sense. Jones, Law of Evidence in Civil Cases, Vol. I, page 215, says:

However, a fact which is not one of public notoriety or general knowledge cannot be the subject of judicial notice. This general rule is illustrated by numerous cases in which the courts have refused to take notice of facts.

See also *Re Salmon Weed & Co.*, 53 F. (2d) 335; *Little* v. *United States*, 73 F. (2d) 861. Further citation to authority is unnecessary.

The conclusion must be that we cannot determine from the stipulation or the dictionary definitions the nature of these machines or their functions clearly enough to ascertain whether or not they are textile machines within the limitations laid down by this court

Since we are unable to take judicial notice of the use of the merchandise we cannot apply the provisions of paragraph 372, *supra*, to any facts of record. The parties cannot bind the court by merely stipulating in the words of the paragraph that the articles are textile machines. The facts of structure and uses, if set forth, might, for all we know, show they are not textile machines in a tariff sense.

A stipulation that an article is a textile machine in the tariff sense is not a stipulation of ultimate fact. The reason for such a conclusion is clear. The primary evidentiary facts underlying such a stipulation would be that the machine was composed of certain component parts and structures, that it was adapted to certain specific uses. The ultimate fact drawn from these primary facts is that such a machine is what is *ordinarily* described as a textile machine in the ordinary use of the term. It does not follow, however, that what is ordinarily considered to be a textile machine is a textile machine in the *tariff sense*. This depends ultimately on the text of the statute pertinent thereto and the decisions of the court interpreting and applying that statute to ultimate facts. It is the function of the court, not the function of a stipulation, to apply the statute to the ultimate facts. Yet if we were to hold that the first half of the instant stipulation is one of ultimate fact it follows that this court is precluded from applying and interpreting the statute. In such a situation all the litigants have to do is to agree that a machine is a textile machine within the purview of the statute and under the decisions of this court. It is just such a procedure that this court is attempting to avoid.

The parties, in the stipulation, have agreed that the machines are "articles having as an essential feature an electrical element or device within the description of paragraph 353 of the tariff act of 1930." This, we think, is purely a stipulation of law. Assuming, without deciding, that the term "essential feature" is an ultimate fact, nevertheless, since none of the machines herein are *eo nomine* provided for in the paragraph, the court if it considered the stipulation would be compelled to apply the doctrine of *ejusdem generis*. The application of this doctrine is certainly a matter of law and would surely involve the interpretation of the paragraph.

We said in *Salomon & Co.* v. *United States*, 7 Ct. Cust. Appls. 5, 8, T. D. 36255:

If it were undertaken, for instance, to stipulate that an agreed statute should receive a stated interpretation it is at once manifest that such a stipulation could not control the court, whose function is to determine for itself that particular thing.

Here we have a stipulation that a statute shall receive a stated application which necessarily involves interpretation. We hold, therefore, that it is a stipulation of law, not binding on the court, and we will not consider it.

This court encourages proper stipulations as an aid in expediting litigation. It should not be a difficult matter in the instant case to stipulate the clear ordinary facts, describing adequately the imported merchandise as to structure and use. The court could then apply the law to the facts.

We are of opinion that we do not have sufficient facts before us to decide this appeal upon its merits. Furthermore, the stipulation attempts to bind us to a limited application of the law without a basis of facts. For the foregoing reasons, the judgment appealed from is *reversed* and the cause is *remanded* for a new trial in accordance with the principles set forth herein.

LENROOT, Judge, specially concurring: I concur in the conclusion reached by the majority, but can not agree that whether or not an article is a textile machine is a question of law that may not be stipulated. To my mind this is clearly a question of fact, and even though it be an ultimate fact it is a proper subject of stipulation. *H. A. Whitacre, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 623, T. D. 47615.

The majority opinion seems to hold that the term "textile machinery," as used in paragraph 372, has a meaning different from its common meaning, and therefore the determination of what is a textile machine is a question of law and not of fact. To this I can not agree. The words "textile machinery," as used in paragraph 372, are used, in my opinion, in their common meaning, and it is just as competent for parties to stipulate that a given machine is a textile machine as it would be for them to stipulate that a device for taking pictures is a camera.

That the tariff meaning of the term "textile machinery" is not different from its common meaning is, I think, in effect held in the case of *Whitlock Cordage Co.* v. *United States*, 13 Ct. Cust. Appls. 656, T. D. 41490.

So far as the second paragraph of the stipulation is concerned, which relates to textile machines, I think the reference to paragraph 372 might well be disregarded as surplusage and as having no effect upon the stipulation.

I do agree, however, that the attempt to stipulate that the articles here in question are within the description in paragraph 353 of the Tariff Act of 1930 is an attempt to stipulate a question of law, and therefore bad. This court has held that an article not *eo nomine* named in paragraph 353 can be included therein only under the

doctrine of *ejusdem generis* (*Steer & Co.* v. *United States,* 24 C. C. P. A. (Customs) 293, T. D. 48737), and the application of this doctrine is, of course, wholly a question of law.

For this reason I concur in the conclusion.