(C. D. 376)

MARSHALL FIELD & Co. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided September 11, 1940)

*James W. Bevans* for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General, for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., dissenting

EVANS, Judge: This is an action against the United States in which the plaintiffs seek to recover money claimed to have been collected and paid as customs duties in excess of the amount due upon an importation of merchandise from China. The only question involved is the rate at which the currency of the invoice should be converted into United States dollars under section 522 of the Tariff Act of 1930. The case has been submitted upon the following stipulation:

IT IS STIPULATED by and between counsel, subject to the approval of the Court, that the lawful rate of exchange which should have been used in the conversion of the currency to United States currency was 1.20 Swatow local paper currency to 1 Yuan (Chinese national currency); and that the Yuan dollar (Chinese national currency) should have been converted at the certified rate on the date of exportation.

It will be noted that counsel have agreed as to the *lawful* rate of exchange. We know of no authority for a stipulation of law. The statute, section 522, *supra*, provides methods for arriving at the lawful rate of conversion.

In the case of *Julius Forstmann & Co.* v. *United States*, 26 C. C. P. A. (Customs) 336, C. A. D. 37, the court discussed the question of stipulations of law and fact. We quote from their decision as follows:

The question of stipulations of law and fact and their effect has been before the courts innumerable times. *Swift & Co.*, v. *Hocking Valley Ry. Co.*, 243 U. S. 281; *Bear River Paper & Bag Co.* v. *City of Petoskey*, 241 Fed. Rep. 51; *In re Gubelman*, 10 F. (2d) 926; *United States* v. *A. W. Fenton Co.*, 16 Ct. Cust. Appls. 418, T. D. 43134; *North American Mercantile Co.* v. *United States*, 18 C. C. P. A. (Customs) 74, T. D. 44030; *Salomon & Co.* v. *United States*, 7 Ct. Cust. Appls. 5, T. D. 36255; *Whitacre, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 623, T. D. 47615. In no one of these cases, nor in the other cases weighed and considered after somewhat extensive research were we able to find a complete and exhaustive study of the matter, nor a precise line of demarcation between law and fact. The difficulty, no doubt, is due to the fact that the distinction, at times, is so intangible that dogmatizing on the subject is a practical impossibility.

If, however, in attempting to stipulate facts, it is clear that litigants improperly circumscribe the freedom of the judicial function, it is elementary that such stipulations are not binding upon the court.

In the case now before us we find nothing in the stipulation but an attempt to stipulate the law, thereby circumscribing the freedom of

the court, counsel having agreed on the "lawful rate of exchange." Such a stipulation is not binding upon the court.

There being no admissible evidence before the court we find that the presumption of correctness attaching to the collector's action has not been overcome.

Judgment for defendant. It is so ordered.

### DISSENTING OPINION

CLINE, Judge: I regret that I am unable to agree with the decision of my associates in this case in holding that the agreed statement upon which the protest in this case was submitted should not be considered because the parties attempt to stipulate the law and therefore the stipulation is not binding on the court. In my opinion the parties agree on a statement of fact and the court is bound by the stipulation. The collector countersigned the stipulation and it is obvious that he admits that there was an error in liquidation due to an erroneous conversion of the currency of the invoice, just as he did in the case of Naman Georges, Inc. v. United States, Abstract 34976, 70 Treas. Dec. 1149, wherein the collector admitted in his report to the court that the currency should have been converted at a rate of exchange other than that upon which the entry was liquidated.

The stipulation is similar to those received frequently by the court in reappraisement cases where the parties agree on the value at which merchandise is freely offered and sold. It is comparable also to the one considered in H. A. Whitacre v. United States, 22 C. C. P. A. 623, T. D. 47615. In that case the parties stipulated that certain statuary belonged to the class of free fine arts, and the trial court held that the stipulation was not binding on the court because the parties stipulated a question of law. In reversing the decision below the court said:

\* \* \* In our opinion, it was not the intent of the parties, in making the stipulations here involved, to attempt to stipulate the "legal effect of admitted facts," but rather to agree upon the essential facts upon which judgment might be entered by the court.

In the case of North American Mercantile Co. v. United States, 18 C. C. P. A. 74, T. D. 44030, the court reviewed a decision of the trial court wherein it was held that a stipulation agreeing that certain items on the invoice were "of the same dutiable character" as merchandise in another case, and incorporating the record in that case, was a stipulation of law rather than of fact. In reversing the decision below the appellate court said:

\* \* \* It is to the interest of the public that customs litigation should be expedited in all proper ways, and the courts should adopt a liberal attitude with respect to stipulations, with the presumption that they are made in good faith and with a view of protecting the interests of both sides of the controversy.

In the case of *Pacific Trading Co.* v. *United States*, 19 C. C. P. A. 361, T. D. 45508, the trial court overruled a protest submitted on a stipulation to the effect that the merchandise "consisted of prepared fish (kamaboko) not shellfish, not packed in oil, containing no substantial quantity of vegetables." In reversing the decision on appeal the appellate court said:

* * * We know of no good reason why, in the absence of fraud, reputable attorneys, representing the parties in litigation, may not freely agree upon and stipulate concerning ultimate facts, even though such stipulated facts control the result of the lawsuit.

In *United States* v. *Champion Coated Paper Co.*, 22 C. C. P. A. 414, T. D. 47422, the court affirmed a decision of the First Division of the United States Customs Court, one member dissenting, in which the parties had stipulated the facts in a drawback case. The appellate court said:

* * * We are in accord with the expression of the majority of the trial court [Brown and Sullivan] that it is not only entirely proper to accept stipulations of counsel as to the facts involved in a case, but that, in most instances, in customs jurisprudence, it is a very desirable practice.

In the case of *United States* v. *Zucca & Co.*, 11 Ct. Cust. Appls. 167, T. D. 38959, the parties stipulated before the trial court that a protest may be sustained as to certain entries and overruled as to others. The trial court rejected the stipulation, but on appeal its decision was reversed. The court said:

There can be no question with the Government it is an inherent power to confess a judgment in a claims case. That is so obvious that it seems trite to make the statement. If, therefore, the particular Assistant Attorney General is authorized and empowered by Congress to unqualifiedly "represent" the Government that unlimited investment of power qualifies the particular Assistant Attorney General to do all things that the principal might do in the particular classes of cases, included within which obviously is the power to dismiss a particular action, to confess judgment in a particular case, or to compromise a particular proceeding.

In the case of *Salomon & Co.* v. *United States*, 7 Ct. Cust. Appls. 5, T. D. 36255, the trial court refused to consider a stipulation concerning wood pulp. Among other things the parties agreed that the wood pulp was produced in and exported directly to the United States from a nation or country with which the United States had, at the time of exportation and entry, a treaty of amity and commerce containing favored-nation provisions. The trial court looked at the import invoice and determined that, although the wood pulp was a product of Sweden, it was imported from Germany and therefore was not imported directly from the country of production to the United States, and overruled the protest. In reversing the decision below the appellate court said:

We are clear that the board erred in failing to take the stipulation as conclusive upon the relevant facts therein set forth, notwithstanding some apparently inconsistent inferences might be drawn from the invoice. The proper representative of the Government must have been satisfied (because there is no suggestion that he has been deceived) that the *facts*, as set forth in the stipulation, were such as could be proven and the board was concluded thereby equally as if they had been proven. It would be a strange thing if litigants or their accredited representatives could not get together and settle for themselves and the court what were the relevant facts touching the litigated issues.

The court also discussed the inability of the parties to stipulate questions of law which would be binding. The court said:

> The right to do this, however, must not be confounded with an attempt to stipulate as to the law. This is a matter ordinarily for the court's determination and is not a proper subject for agreement, although it often happens that there is no disagreement as to what the law may be. If it were undertaken, for instance, to stipulate that an agreed statute should receive a stated interpretation it is at once manifest that such a stipulation could not control the court, whose function is to determine for itself that particular thing. The difference in the two instances is that the *parties* only are interested in the facts in issue between them, while the *public* is interested in the interpretation of the statute. For a sufficient discussion of the effect of stipulation see 36 cyc, 1279–1298.

In the case of *Julius Forstmann & Co.* v. *United States*, 26 C. C. P. A. 336, C. A. D. 37, cited in the majority opinion, the portion of the agreement which the court held was stipulation of law, reads:

> It is further stipulated that for the purposes of this case it is agreed that the foregoing machines are textile machines within the provision of paragraph 372 of the Tariff Act of 1930, reading, "all other textile machinery, finished or unfinished, not specially provided for," but are not knitting, braiding, lace-braiding, or insulating machines, or similar machines.
>
> It is further stipulated that the machines covered by this protest are articles having as an essential feature an electrical element or device within the description in paragraph 353 of the Tariff Act of 1930.

The trial court accepted the stipulation and considered that, as the machine was within the description of both paragraphs 372 and 353, the sole question for decision was as to which paragraph controlled the classification. It was held that the machines were dutiable as textile machines under paragraph 372 as classified by the collector. On appeal the legality of the stipulation came up for consideration, and the court held that since the parties agreed that the machine was within the tariff description of both paragraphs 372 and 353 and did not stipulate facts which would aid the court to make its own finding, the parties invaded the function of the court and stipulated the law. The case was remanded for a new trial.

The stipulation in the instant case is quite different from that in *Julius Forstmann & Co.* v. *United States, supra.* Here the parties stipulated a basis for conversion which it was the duty of the collector to find. In my opinion it is a fact in which the *parties* are interested.

It is not an interpretation of the statute in which the *public* is interested such as was construed by the court in *Salomon & Co.* v. *United States, supra,* to be a question of law. The stipulation is merely an agreement "upon the essential facts upon which judgment might be entered by the court," as stated by the court with respect to the stipulation in *H. A. Whitacre* v. *United States, supra.* In my opinion, although this court is without jurisdiction to weigh the accuracy of a proclamation of the Secretary of the Treasury giving a conversion rate of exchange of foreign currency, it has full jurisdiction to review any finding or computation of the collector made under the authority of the proclamation.

The court has taken jurisdiction in a number of cases where the collector made a mistake in converting the currency. In *B. H. Dyas Corporation* v. *United States,* T. D. 43600, the court held that, where a vessel sailed from two ports of the country of exportation, the collector should have converted the currency at the value of the currency on the date of the last sailing rather than the first.

In *Pande Cameron & Co.* v. *United States,* T. D. 45069, where the vessel sailed from the exporting country on January 1, 1930, which was a legal holiday and was the first day of the new quarter, the court held that the collector in converting the currency should have made a comparison of the buying rate as determined by the Federal Reserve Bank on the day previous to the holiday with the value proclaimed by the Secretary of the Treasury in the quarter in which the previous day fell, rather than comparing the value of the Federal Reserve buying rate of December 31 with the proclaimed value of the currency for the quarter beginning January 1, 1930.

In *A. J. Bracher Co.* v. *United States,* T. D. 47935, the court held that the collector should have converted the currency (Mexican dollars) in an invoice covering merchandise from China at the proclaimed rate rather than at the rate promulgated for the Tientsin yuan dollar.

In *International Harvester Hat Co.* v. *United States,* Abstract 9702, 56 Treas. Dec. 816, the court held that the collector should have converted the currency at the exchange rate of the Mexican dollar as that rate varied more than 5 per centum from the proclaimed rate on the day of sailing.

In *Naman Georges, Inc.* v. *United States,* Abstract 34976, 70 Treas. Dec. 1149, the court held that the currency should have been converted on the basis of the equivalent for the Chinese yuan Swatow dollar rather than the value of the yuan dollar applicable on the date of sailing.

In *Carson, Pirie, Scott & Co.* v. *United States,* Abstract 41390, 2 Cust. Ct. 717, the case was submitted on an oral stipulation in court

giving substantially the same facts with respect to Swatow currency that are contained in the written stipulation in this case. The court accepted the stipulation and decided the case in accordance therewith. The issue in that case is identical with that in the case herein and it would seem that in justice to the litigants the matter should be considered as *stare decisis*.

The tariff provision relating to the conversion of the currency is found in section 522 of the Tariff Act of 1930, reading as follows:

(a) VALUE OF FOREIGN COIN PROCLAIMED BY SECRETARY OF TREASURY.— Section 25 of the Act of August 27, 1894, entitled "An Act to reduce taxation, to provide revenue for the Government, and for other purposes," as amended, is reenacted without change as follows:

SEC. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year.

(b) PROCLAIMED VALUE BASIS OF CONVERSION.—For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after the day of the enactment of this Act, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of section 25 of such Act of August 27, 1894, as amended, for the quarter in which the merchandise was exported.

(c) MARKET RATE WHEN NO PROCLAMATION.—If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. If the date of exportation falls upon a Sunday or holiday, then the buying rate at noon on the last preceding business day shall be used. For the purposes of this subdivision such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary of the Treasury, who shall make it public at such times and to such extent as he deems necessary. In ascertaining such buying rate such Federal reserve bank may in its discretion (1) take into consideration the last ascertainable transactions and quotations, whether direct or through exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange.

The statute prescribes the method to be used in determining the value of foreign currency. In order to make such a determination the collector must make certain investigation and findings. First, he must ascertain the date the vessel sailed from the exporting country. Second, he must examine the proclamation of the Secretary of the Treasury for the quarter in which the vessel sailed in order to find if there was a proclaimed value for the currency of the invoice or the currency in which the merchandise was appraised, and make note of that value if it is contained in the proclamation. Third, he must

examine the promulgation of the Secretary of the Treasury giving the value of the currency as determined by the Federal Reserve Bank of New York, stating the buying rate of that currency in New York on the day of exportation of the merchandise. Fourth, by a mathematical calculation, he must determine whether the buying rate of the exchange in New York varies by more than 5 per centum from the proclaimed rate for the quarter in which the merchandise was exported. If he finds that the proclaimed rate varies more than 5 per centum from the buying rate of the currency in New York, he must convert the currency of the invoice in accordance with the buying rate certified by the Federal Reserve Bank, but, if the buying rate in New York does not vary by more than 5 per centum from the proclaimed rate, he must convert the currency in accordance with the rate proclaimed by the Secretary of the Treasury at the beginning of the quarter. In all of these decisions the collector does nothing more than make perfunctory factual determinations. If he makes a mistake in any one of his computations or determinations it is my opinion that the court has jurisdiction to review his findings, and that such review would not be a consideration of the validity of the statute.

The majority holds that section 522 provides methods for arriving at the lawful rate of conversion and that, because the parties stipulated that "the lawful rate of exchange which should have been used in the conversion of the currency to United States currency was 1.20 Swatow local paper currency to 1 Yuan (Chinese national currency); and that the Yuan dollar (Chinese national currency) should have been converted at the certified rate on the date of exportation," the stipulation is invalid because the parties stipulated a question of law. In my opinion the stipulation states facts which will enable the court to convert the currency by the methods prescribed in section 522, that is, the court should determine first the value of the Swatow currency in Yuan dollars, the value of which currency was reported by the Federal Reserve Bank, and then the court could find the value in United States currency or direct the collector to find that value by the methods prescribed by the statute.

A notation on the entry in this case shows that the exporting vessel sailed from Hongkong on November 15, 1937, and the invoice and entry show that the money of the transaction is Swatow currency. The appraiser checked the summary sheet which indicates that the merchandise was appraised as entered. Therefore, the merchandise was appraised in Swatow currency. Under the provisions of the statute it was the duty of the collector first to examine the value of Chinese currency proclaimed by the Secretary of the Treasury for the quarter beginning October 1, 1937 (T. D. 49175) which does not give the value of Swatow currency in terms of United States money. In the column

headed by the words "Value in terms of U. S. Money," no value of Chinese currency is given. Under the heading of the word "Remarks" the following appears:

Silver standard abandoned by decree of Nov. 3, 1935; bank notes made legal tender under Currency Board control; exchange rate for British currency primarily fixed at about 1s. 2½d., or about 29½¢ U. S. per yuan.

After finding that there was no proclaimed value for the Swatow currency, it was then the duty of the collector to examine the values of Chinese currency determined by the Federal Reserve Bank as indicating the value in the New York market on November 15, 1937, the day of exportation. This is found in T. D. 49259. An examination of that promulgation shows that the value of Swatow currency is not contained therein. The only values of Chinese currency shown are as follows:

```
Chefoo dollar (Yuan) _____ .294062
Hankow dollar (Yuan) _____ .294062
Shanghai dollar (Yuan) _____ .294062
Tientsin dollar (Yuan) _____ .294062
```

It is obvious that neither the proclamation by the Secretary of the Treasury nor the promulgation of the buying rate in New York contains any value for the Swatow currency. Under these circumstances how does section 522 provide a method for arriving at the lawful rate of exchange? A notation on the invoice shows that the collector converted the currency using .292955 as the rate of exchange, which rate does not appear in either the proclamation of the Secretary of the Treasury or the promulgation of the rates of exchange ascertained by the Federal Reserve Bank. An examination of the entry and the summary sheet shows that the rate of exchange used by the importer in making the entry was .243455. The collector crossed out those figures on the entry and inserted .292955. The collector must have reached his decision by a mathematical calculation, and I believe that his conclusion or decision is a statement of the fact he found. In my opinion this court has jurisdiction to review the collector's decision under the authority of the provisions of section 514 of the Tariff Act of 1930. The collector evidently made a mistake in his calculation, and the parties, with the approval of the collector, attempted to correct that mistake by a stipulation. They agreed to the facts and I am of opinion that the court should find the facts stipulated and decide the case in accordance with the terms of the stipulation as it did in *Carson, Pirie, Scott & Co.* v. *United States*, *supra*.