BARTLETT, (GOODHUE v.) See Case No. 5,538.

## Case No. 1,077.

### BARTLETT v. KANE.

[Taney, 186.][1]

Circuit Court, D. Maryland. April Term, 1852.[2]

CUSTOMS DUTIES—APPRAISEMENT—POWER OF SECRETARY OF THE TREASURY—PRODUCTION OF DOCUMENTS — RECOVERY OF PENALTY PAID UNDER PROTEST.

1. In an action against the collector of customs, to recover duties paid under protest, on an importation of Peruvian bark, where it appeared, that the official appraisers, under instructions of the secretary of the treasury, had predicated their valuation of the bark on the quantity of sulphate of quinine produced by the several packages in the invoice: *held*, that the secretary of the treasury had no power to fix a chemical analysis of bark as the only test of its dutiable value.

[See note at end of case.]

2. The law of congress fixes the duties upon the market value at the port of exportation; the purchaser must and can only look at the fair market value of the article among those trading in it at the port of exportation; and he can only be required to adopt the methods usually adopted by merchants in making purchases.

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

[2] [Affirmed in 16 How. (57 U. S.) 263.]

3. But still the appraisers, when they suspect a wrong done to the government, have a right to employ this means as a test by which, with the other knowledge and information in their power, they may be able to arrive at a correct estimate of the true value of the article imported.

4. An appeal from the decision of the official appraisers to that of merchant appraisers was made by the importers; but on the official appraisers demanding of them the production of all documents connected with the importation, they refused to comply with the demand, withdrew the appeal, and paid the duties under protest: *held*, that the parties, by withdrawing their appeal, and refusing to produce the papers called for, had fixed the correctness of the appraisement.

[See note at end of case.]

5. The appraisers had the right to call for these papers, whether with the view of correcting their own judgment, if erroneous, or of laying them before the merchant appraisers, in the event of a prosecution of the appeal.

[See note at end of case.]

6. A refusal to produce papers admitted to be in a party's possession, raises the strongest inference that the papers, if produced, would operate against the person holding them.

7. The act of congress (30th August, 1842, [5 Stat. 564,] § 17) makes it, in such a case as this, conclusive proof, that the papers, when - produced, would be demonstrative against the pretensions of the party having them in his possession.

8. A demand for these papers could properly be made by the official appraisers, even after their own decision had been given.

9. Where the penalty of twenty per cent. is imposed on an importation, because of the excess of the market value, over the invoiced value, which is paid under protest, and such importation, having only been entered for warehousing, is afterwards exported elsewhere for sale: *held*, that the importer was not, for this reason, entitled to recover back the amount of the penalty so paid.

[See note at end of case.]

[At law. Suit by Edwin Bartlett against George P. Kane, collector of the port of Baltimore, to recover customs duties alleged to have been illegally exacted. Verdict and judgment for defendant. This judgment was afterwards affirmed in 16 How. (57 U. S.) 263. See note at end of case.]

It is admitted that, in the month of September, 1849, the barque St. Joseph brought to the port of Baltimore, six hundred and fourteen seroons of Peruvian bark, shipped at Arica, in Peru, in January preceding, and consigned to the plaintiff, residing in New York, as appears from the invoice, a copy of which is herewith filed, marked A. That said bark belonged to Messrs. Pinto & Co., of Arica, and was obtained by them under the contract and circumstances shown by the testimony taken under the commission in the above cause. It is admitted that, on the arrival of the St. Joseph in Baltimore, Messrs. Birckhead & Pearce, the agents of the plaintiff, entered two hundred seroons, of the first quality, of said bark, for consumption, and the rest of the invoice for warehousing; and that subsequently, the defendant caused the whole of said importation to be appraised,

and that the official appraisers, acting in obedience to instructions from the secretary of the treasury in reference to the appraisement of this article, proceeded to ascertain the quantity of quinine in said bark, by chemical analysis, in order to fix therefrom the dutiable value of said bark. It is admitted, that said appraisers, in accordance with said analysis, reported that the one hundred and thirty-four seroons of third quality, mentioned in the invoice, were not undervalued; but that upon the other two parcels, valued in the invoice and entry at $49,737 Peruvian, or $45,758 04/100 American currency, they reported a deficiency of dutiable value, in the amount declared in the invoice and · entry, of $7339 56/100, upon which increased value, a duty of fifteen per cent., amounting to $1100 93/100, was exacted by the defendant, and likewise an additional duty, by way of penalty for undervaluation, of twenty per cent. on the appraised value, amounting to $10,799 40/100, was likewise exacted, making together the sum of $11,900 33/100, which, in addition to the duty of fifteen per cent. on the dutiable value declared in the invoice and entry, was paid by the plaintiff under protest, to obtain the possession and control of his said goods. It is further admitted that, of the two hundred and fifty-four seroons of first quality bark which were entered for warehousing, twenty-five were re-shipped to Amsterdam, by the plaintiff, from Baltimore, and one hundred and three were transported to New York (whence one hundred of them were also re-shipped), and thus said one hundred and twenty-five seroons became entitled to drawback, which was paid to the plaintiff, but the penalty of twenty per cent. for undervaluation on these seroons has never been returned. It is agreed, that the instructions of the secretary of the treasury, having reference to the questions involved in this case, may be referred to by either party, for whatever purpose they may be legally available, as well as all official documents from the custom-house. That the official appraisers, on the 6th of October, 1849, notified Messrs. Birckhead & Pearce that they should require the production of all papers or documents relative to said importation, and Messrs. Birckhead & Pearce notified the plaintiff, Mr. Bartlett, of this requisition of the official appraisers, whereupon Mr. Bartlett, by his letter of the 11th October 1849, declined the production of the papers, &c., demanded, and directed Messrs. Birckhead & Pearce to withdraw the appeal they had made, and to pay the duties and penalty required, under protest; and at the same time proposed, as a final settlement, to pay the additional duties, provided he was released from paying the penal duty of twenty per cent. This statement is subject to corrections by either party as to details or explanation, as the oral testimony in the case, at the trial, may require.

Brown & Brune, for plaintiff.

The plaintiff prays the court to instruct the jury:

1. That until superseded by a valid appraisement, the dutiable value of the plaintiff's goods, mentioned in the invoice, duly verified, and declared on the entry, must be deemed the true dutiable value of such goods.

2. The plaintiff further prays the court to instruct the jury that the mode pursued by the appraisers, as stated in their evidence, of ascertaining the foreign dutiable value of the plaintiff's import and bark, per St. Joseph, was illegal, and their appraisement void.

3. That the non-compliance by the plaintiff with the requirements of the appraisers, contained in their letter of the 6th October 1849, did not make valid the illegal appraisement of the plaintiff's goods previously made and then still appealed from.

4. That the seventeenth section of the act of 1842, which declares that the refusal of a consignee to produce any papers which the permanent appraisers may call for, shall render the appraisement which they may make final and conclusive, applies only to appraisements made after such refusal, and therefore can have no effect in this case.

5. That the additional duty exacted and retained on the parcels entered for warehousing, and entitled to debenture and exported, was illegally exacted.

6. That under the contracts between the Messrs. Pinto & Co. and the Bolivian government, the plaintiff's goods are not to be considered goods "actually purchased," within the meaning of the eighth section of the act of 1846, and therefore, the penalty prescribed by that act, and exacted in this case, was illegally exacted, and may be recovered back in this suit.

Z. Collins Lee, Dist. Atty., for defendant.

Upon the statement of facts and other evidence in this case, the defendant, by his counsel, asks the following instructions to the jury:

1. That the plaintiff is not entitled to recover the amount claimed in this action, because he has not complied with the requisitions of the act of congress in such cases provided.

2. That the value of the bark imported and appraised in this case, was the true value, with the costs and expenses added thereon; and was ascertained by the official appraisers, in the mode authorized by law and the instructions of the treasury department to the collectors in such cases.

3. That the penal duty of twenty per cent., imposed by the act of congress of 1846, for an undervaluation of goods in invoices imported into the United States, is not a duty, in the ordinary meaning of duties or imposts, but a penalty or fine inflicted for a violation

of the revenue laws of the United States, and is not, therefore, subject to drawback or debenture, upon a reshipment of the goods which have been subjected to this penalty.

4. That upon all the evidence in this case, the defendant acted in compliance with the laws of the United States and instructions from the treasury; and though the official appraisers of the United States examined the bark of the plaintiff, and also had it analyzed by a chemist appointed by the government, and compared its analysis and value with that of a similar cargo of bark imported from the same country by Wyman, Appeton & Co., and brought into the port of Baltimore about a month before the bark of the plaintiff was entered; yet, if from the evidence in this case that the plaintiff was duly notified, by the official appraisers, of the undervaluation of his bark, and their increase of the marketable value, after such examination, analysis and comparison, and that he was required by the appraisers to furnish papers, documents or other evidence, for the purpose of satisfying said appraisers as to the value of said importation, and refused to comply—and afterwards, or at that time, withdrew his appeal to the merchant appraisers, and then paid the duties under protest—he is not entitled to recover.

TANEY, Circuit Justice. The facts of this case are these: In the month of January, 1849, Messrs. Pinto & Co., of Bolivia, shipped from the port of Arica, in Peru, a quantity of bark, grown in Bolivia, but known under the name of Peruvian bark. These shippers had, in the years 1845 and 1846, contracted with the Bolivian government for a monopoly in the trade of this article, for the term of several years, for which they were to pay the government a certain price. One of these contracts states that "Tabla Calisaya bark, which is cut from the body of the tree, being of three times the value of Canato bark, which is cut from the branches, and this by reason of the greater quantity of the salts, the active principle, contained therein." The bark, thus procured, is sent to Tacna, and thence usually to Arica, a port in Peru, from which port it is shipped abroad; from this port are also sent quantities of this bark, which are obtained clandestinely, and brought to Arica; sometimes this bark is shipped from a Bolivian port, but this much increases its cost at the port of shipment.

The bark in question was, by Pinto & Co., dispatched from Arica, in the ship San Josef, destined for Baltimore, to the plaintiff, residing in New York; and he consigned it to Messrs. Birckhead & Pearce, of Baltimore, by whom it was here entered at the customhouse, in the month of September 1849. In the invoices accompanying this shipment, the first quality, or Tabla Calisaya, was invoiced at $70 per quintal.

About a month before the arrival of the San Josef at Baltimore, another invoice of

bark had arrived in Baltimore, in the barque George and Henry, to different consignees, which had left the port of Arica, about two months after the date of the bill of lading of the cargo in question, and there was evidence that a rise, throughout the whole of 1849, had taken place in the price of this kind of bark in the ports of South America. The first quality of bark received by the George and Henry was invoiced, some at eighty cents and some at ninety. On the arrival of the plaintiffs' cargo, Messrs. Birckhead & Pearce entered it in the usual way, and samples of it were submitted to the appraisers for examination; neither of the appraisers was a good judge of the value of this article, but directed it to be subjected to a chemical analysis, by the government chemist, and having subjected the bark of the other shipment to a like process, they found the cargo by the San Josef, which was invoiced at $70 per quintal, to contain more sulphate of quinine than the bark received by the George and Henry, which was invoiced at a much higher price, this sulphate of quinine being the active principle of the bark. To this test the appraisers felt themselves bound to subject this bark, in consequence of the orders of the treasury circular of the 2d day of November 1848, in these words:

Copy 1.

Treasury Department, November 2, 1848.

Sir: I have to acknowledge receipt of your communication of the 21st ult., with the report of the U. S. appraisers, in relation to an importation by Messrs. Birckhead & Pearce, of Baltimore, per barque "George and Henry," from Arica. It appears from the documents submitted, that the valuation of the article in question, was predicated by the appraisers on the quantity of sulphate of quinine produced by the several packages in the invoice; a portion of the same, invoiced at $65, found, on analysis by Dr. Stewart, the special examiner, to produce 2 24/100 per cent. of quinine, being taken as the basis of the value of the others (with certain exceptions), which, by the analysis, produced an equal proportion of quinine.

It being the opinion of this department, that the course pursued by the U. S. appraisers was the true one, under the circumstances, and is sustained by law, you are directed to estimate and adjust the duties accordingly.

Very respectfully, &c.,

R. J. Walker, Secretary of Treasury.

William H. Marriott, Collector of Customs, Baltimore.

After calling for the bill of lading, which was sent to them, the appraisers determined that the duty upon the bark should be so increased, that it became liable to the additional or penal duty of twenty per cent., and made to the collector the following report:

Appraisers' Office,
Baltimore, October 3, 1849.

The undersigned report to the naval officer an addition to E. Bartlett, of New York's, invoice of bark, per barque St. Joseph, from Arica, entered by Birckhead & Pearce, on 21st ult., viz:

J. T. P. 454 seroons bark, weighing 681
  quintals at $10 98.....is $7204 98
J. P., 26 ditto. ditto. 39
  quintals, $14 82.62.........575 22

                    $7783 20
Commissions 2½ per cent.  194 58

Peruvian currency.......$7977 78@92cts. $7339 56

  Duty 15 per cent.....................$1100 92
                 M. McBlair.

E. Bartlett, New York, per St. Joseph, entered by Birckhead & Pearce, 494 seroons bark:

681 quintals, at 70 cts., is...............$47,670 00
Commissions 2½ per cent.............. 1,191 75

                   $48,861 75

The 13 seroons bark, per George and Henry, which cost 80 cents per pound, produced 2 76/100 per cent. of quinine.

The above bark, per St. Joseph, is invoiced at 70 cents, and produced 2 78/100 quinine per cent., and consequently—

Ought to have been invoiced.................80 58
                         70

Difference............................10 58

If this addition be made, it will stand as follows:

681 quintals at 10 58-100 per quintal, is....$7204 98
Commissions 2½ per cent................. 180 12

                   $7385 10

J. P., 26 seroons, invoiced at 53 cents, produced 2 34/100 per cent. of quinine. In proportion to the above, it ought to be valued, viz:

39 quintals, at $14 82.63, is.................$578 22
2½ per cent. commissions.................. 14 16

                   $592 68
$7977 78 at 92, is $7339 56, U. S. currency.
  Duty, 15 per cent., is $1100 92.
  Peruvian currency....................$7977 78

On the 4th October, the collector notified Messrs. Birckhead & Pearce of this decision; they, on the next day, desired to be furnished with the grounds of such decision, and on the 6th October, protested in writing against it and asked that the case should be submitted to merchant appraisers, as required by law. On the same day, and after such request of Birckhead & Pearce, the appraisers wrote to Messrs. Birckhead & Pearce this letter:

Appraisers' Office,
Port Baltimore, 6th Oct., 1849.

Gentlemen: In relation to your appeal, in the case of Mr. E. Bartlett's importation of bark, per barque St. Joseph, from Arica, we beg leave respectfully to notify you, that we require of this gentleman the production of all correspondence and letters and accounts in his possession relative thereto, and that he shall make a deposition before the collector of New York, that the papers he sends are all the documents he has received relating to this shipment.

Very respectfully,      M. McB.,
                      H. W. E.
Messrs. Birckhead & Pearce.

The appraisers now state, that this letter was written to enable them to ascertain if they had committed any error or mistake in their opinion, and to enable them to review and correct the same, if erroneous.

On the 11th October, Mr. Birckhead declined to furnish the papers asked by the appraisers, in their letter of the 6th, directed the appeal to the merchant appraisers to be withdrawn, proposed to pay the additional duty, except the twenty per cent., as assessed by the appraisers, and if this were declined, instructed Birckhead & Pearce to pay the duties under protest. This is the letter:

New York, 11 October, 1849.
Messrs. Birckhead & Pearce, Baltimore.

Dear Sirs: I have yours of 9th and 10th instant. I return the debenture certificate endorsed. In looking more carefully to the requisition of your appraisers of bark, per St. Joseph, I find that I shall have to have copied and translated a mass of correspondence from January last, when it was shipped, to August; for reference is made to it in all my letters from Pinto & Co. and Alsop & Co., in order the more fully to explain Pinto & Co.'s mode of invoicing the bark. I shall have to present a series of documents, commencing in 1847, with their contract with the Bolivian government, proving its actual cost to be about $60 per quintal; all these are necessary to make out my own case, and I am unwilling to present anything less than all the documents. I do not see, however, what use they can be of, at present, to the appraisers, who have made up their valuation of the bark and made a return to the collector. I shall, therefore, defer the presentation of my documents for another tribunal, and, not to lose more time in delivering the bark to the purchasers, I wish you to inform the collector that, by my instructions, your appeal is withdrawn; and that you are prepared to pay, under protest, whatever duties may be exacted on the bark. You will then please send to me in bond what has been so directed, and deliver the remainder, as already ordered. At leisure, we can then test the question of this exaction.

The appraisers have been misinformed of the value of bark at Arica, in January last; after the large sales I made here in March and April were known, it never rose there above seventy-five to eighty cents, and if any small parcels were, at any time, smuggled to the coast and sold at that, or even a higher price, it was no guide to its value.

If a resort to the courts can be avoided, by having the valuation fixed at a rate not imposing the additional duty of twenty per cent., I shall be glad, for I have no disposition to engage in a law-suit. My immediate want, however, is the bark, and I will take my chance of having justice done, by paying all that is now asked, under protest. You can draw on me, at sight, for what funds may be required. I credit you $111 03, for proceeds of C. Keener's draft of $114 96.

Yours,                Edwin Bartlett.

Some further correspondence occurred, in all of which the appraisers insisted upon the correctness of their views, and adhered to their original opinion. Some part of the cargo by the San Josef was entered for consumption, and some for exportation. Mr. Bartlett being desirous of having the latter portion trans-shipped to New York, the collector before he would permit this to be done, insisted upon receiving all the duties thereon, including the twenty per cent. additional, which was also paid under protest. The papers called for by the appraisers in their letter of the 6th October, have not been furnished, even upon the trial.

The counsel for the plaintiff contends:

1. That the invoice valuation of the goods is deemed the true value until evidence be offered to show this valuation to be erroneous.

2. That the only method of correcting this valuation is by showing a valid appraisement according to law.

3. That the appraisement, in this case, was not a valid one.

4. That the refusal of the said plaintiff to furnish the papers called for by the appraisers did not affect his interest, but that the appraisement was erroneous.

5. That having exported some of this bark, he is entitled to the debenture upon such exportation, including the twenty per cent. he paid as a penal infliction, for an attempt to defraud the revenue laws of the United States.

The first proposition may be conceded to the plaintiff, and the question occurs, was the appraisement in this case a valid one? I do not think the secretary of the treasury had the power of fixing a chemical analysis of bark, as the only test of its dutiable value, in the manner he attempted to do, in his circular of 2d November 1848; although the contract of Pinto & Co., regards this as one method of determining the relative values of bark. The law of congress fixes the duties upon the market value at the port of exportation; and this can certainly not mean that a purchaser of this commodity shall, when he goes to buy, carry with him a chemist to fix the exact quantity of sulphate of quinine contained in the thing purchased; but he must, and can only look at the fair market value of the article among those trading in it at the place of exportation; he can only be required to adopt the methods usually adopted by merchants in making purchases. Still, the appraisers, when they suspect a wrong done to the government, have a right to employ this means as a test, by which, with the other knowledge and information in their power, and to be procured by them, they may be enabled to arrive at a correct estimate of the true value of the article imported. Here, too, when the appraisers, having seen the two articles, are unable to form a judgment with regard to their value, they had a right to resort to this mode of ascertainment, and with this information before them, they could legitimately come to the conclusions they have reached.

But, supposing I am wrong upon this subject, the party by withdrawing his appeal, and refusing to produce the papers called for, has fixed the correctness of the appraisement. The appraisers certainly had the right to call for these papers, whether with the view of correcting their own judgment, if erroneous, or of laying them before the merchant appraisers, in the event of a prosecution of the appeal.

To refuse to produce papers, admitted to be in a party's possession, always raises the strongest inference that those papers, if produced, would operate against the person holding them. In government claims, this refusal almost amounts to evidence of fraud. The act of congress makes it, in such a case as this, conclusive proof that the papers, when produced, would be demonstrative against the pretensions of the party having them in his possession. The act makes no restriction as to the time when these papers may be called for; it does not designate who shall make the demand, and I see no reason why the demand made in this case was not properly made, and by the proper officers.

The next question then is, to what amount of debenture is the party entitled in this case, upon the bark which he had exported? Here there is an increase made by the appraisers of about fifteen per cent. upon the invoice value of the cargo. The consequence of this appraisement is, that a penal exaction of twenty per cent. is imposed upon this cargo, by way of punishment for the attempt upon the revenue laws of the country. Here are two distinct things, one is an ascertainment of actual value. the other the penal consequence flowing from this ascertainment of real value; the first fixes the actual value upon which, if the party had entered the goods at the price so fixed, the duty would have been paid; it fixes the value of the goods on which the ad valorem duty is to be charged; this duty is affected by the increase or decrease of such value. But the second is quite another affair; if the appraisers fix the increased value at $11 25, or fifty per cent. over the invoice, the same twenty per cent. can be charged; the one fluctuates according to the judgment of

the appraisers, they have the right of determining what it shall be; the other is a fixed and settled per-centage established by the act of congress.

If upon this twenty per cent. assessment, a party would have a right to claim a debenture, the party offering might defeat this provision by an exportation of the articles in regard to which he had offended. I, therefore, think that the plaintiff is not entitled to any drawback upon the exportation of this bark, beyond the duty which would accrue if the goods had been entered at the price fixed by the appraisers as their true value.

Verdict for defendant.

[NOTE. Upon appeal the supreme court affirmed the judgment. upon the grounds, with others, that the appraisers had power to require the production, on oath, of all letters, accounts, or invoices relating to the goods imported; that the direction of the chemical examination, though perhaps improper, did not destroy the validity of the appraisement; that the importer having appealed, from its appraisement on withdrawal of the appeal, and refusal to furnish the letters called for, the appraisement stood good; and that the importer was not entitled to the 20 per cent. additional duty assessed under Act July 30, 1846, § 8, (9 Stat. 43,) as a drawback upon re-exportation. Bartlett v. Kane, 16 How. (57 U. S.) 263.]