**NTN BEARING CORP. OF
AMERICA et al.**

v.

**UNITED STATES.**

R.D. 11749; Reappraisement R64/8482
and 4 others.

United States Customs Court.

Sept. 1, 1971.

Brooks & Brooks, New York City (J. Joseph McDermott, New York City, of counsel), Barnes, Richardson & Colburn, New York City (Hadley S. King, and Norman Schwartz, New York City, of counsel), for plaintiffs.

L. Patrick Gray, III, Asst. Atty. Gen. (Glenn E. Harris and Morris Braverman, New York City, trial attorneys), for defendant.

NEWMAN, Judge:

These five consolidated appeals for reappraisement present the issue as to the proper dutiable value of certain "NTN" brand ball bearings exported from Japan by Mitsubishi Shoji Kaisha, Ltd. and Mitsui & Co., Ltd., during the period from April 30, 1961 to September 30, 1963. The imported bearings were manufactured by The Toyo Bearing Manufacturing Co., Ltd. of Osaka, Japan.

The merchandise was appraised at various prices in yen on the basis of foreign value, as that term is defined in section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165.[1]

1. The merchandise appears on the Final List promulgated by the Secretary of the Treasury, 93 Treas.Dec. 14, T.D. 54521.

Plaintiffs claim certain lower values for the bearings on the basis of foreign value.

## STATUTES INVOLVED

Section 402a(a) of the Tariff Act of 1930, 46 Stat. 708, as amended and renumbered by the Customs Simplification Act of 1956, 70 Stat. 943, 946:

(a) *Basis.*—For the purposes of this Act the value of imported articles designated by the Secretary of the Treasury as provided for in section 6(a) of the Customs Simplification Act of 1956 shall be—

(1) The foreign value or the export value, whichever is higher;

\* \* \* \* \* \*

Section 402a(c) of the Tariff Act of 1930, 46 Stat. 709, as amended by the Customs Administrative Act of 1938, 52 Stat. 1081, and as renumbered by the Customs Simplification Act of 1956, 70 Stat. 943:

(c) *Foreign value.*—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402a(d) of the Tariff Act of 1930, 46 Stat. 709, as renumbered by the Customs Simplification Act of 1956, 70 Stat. 943:

(d) *Export value.*—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchan-

dise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

## THE RECORD [2]

Between 1959 and 1963, bearings manufactured by The Toyo Bearing Manufacturing Co., Ltd. were sold to its subsidiary in Japan, The Toyo Bearing Sales Co., Ltd., who in turn resold such bearings to original equipment manufacturers and to approximately 160 selected distributors in Japan. The distributors sold "NTN" bearings in the home market to original equipment manufacturers and to dealers or retailers for resale. Prices charged by the distributors were based upon varying discounts from a list price. The distributors granted "a special price [to original equipment manufacturers] over those who purchased for resale", and also "granted slightly better prices to a customer who bought large quantities". However, the distributors had no "uniform schedule of discounts dependent upon quantity".

Exhibits 2 through 8 are affidavits executed by officials of seven major distributors of NTN bearings in Japan, in which affidavits the distributors' net sales prices or discounted prices are set forth for the period from January 1, 1959 to December 31, 1964. The seven affidavits are all couched in basically the same language and all contain this statement:

\* \* \* While we may have sold to some few customers at lower net prices, the following represents the

---

2. The record is comprised of nine affidavits and the official entry papers introduced in evidence by plaintiffs. Defendant presented no evidence.

highest prices at which such bearings were sold by us in our normal daily business and represents the net prices at which most of our sales were made.

The above-quoted statement is then followed by certain discounted or net prices expressed as a percentage of the list prices (referred to as "on" prices). The affidavits purport to show that the bearings were sold at net prices which periodically declined from 1959 through 1964.

### 1.

The court is faced with the threshold issue of the price at which the imported NTN bearings were freely offered for sale to all purchasers by Toyo's distributors at the relevant exportation dates.

At the outset, it should be noted that plaintiffs claim that the manufacturer (Toyo) did not freely offer bearings for consumption in Japan; that consequently there was no foreign value at the primary level of sales; that the bearings were freely offered for sale on a secondary level by the distributors; and thus there was a foreign value on a secondary level.

Inasmuch as the distributors, as between themselves, were selling the bearings at varying prices, plaintiffs contend that the lowest price at which the bearings were freely offered for sale by any distributor represents the correct foreign value.

Defendant, on the other hand, contends that plaintiffs have failed to establish that the bearings were freely offered for sale to the trade in Japan at any prices other than those at which the merchandise was appraised, viz.: list price less 47% discount.

■ Specifically, defendant argues that the distributors' net sales prices (list prices less discounts) were arrived at by bargaining between the distributors and their customers. It is funda-mental, of course, that a price arrived at by bargaining between the seller and buyer is not a "freely offered" price to all purchasers. United States v. Mexican Products Co., 28 CCPA 80, C.A.D. 129 (1940); Garbey v. United States, 24 CCPA 48, T.D. 48332 (1936).

■■ There is no basis in the record for affirmatively finding that the distributors' prices were the result of bargaining, as urged by defendant. Nevertheless, inasmuch as none of the distributors had uniform net selling prices or discounts to all purchasers (merely to "most" purchasers), it was clearly incumbent upon plaintiffs, as part of their *prima facie* case, to show the manner in which sales were made and the circumstances surrounding the discount differentials. Such a requisite showing is lacking in the record.[3] Consequently, I have concluded that the presumption of correctness attaching to the appraised values has not been overcome. Cf. United States v. North American Asbestos Corp., 44 Cust.Ct. 801, A.R.D. 123 (1960), aff'd 48 CCPA 153, C.A.D. 783 (1961).

While the above holding alone warrants affirmance of the appraised values, defendant urges still another reason which compels upholding of the appraisements.

■ Defendant invokes section 402a (a) (1) of the Tariff Act of 1930, as amended,[4] which provides that the value of imported merchandise shall be the foreign value or the export value, *whichever is higher*. The appraisements herein, on the basis of foreign value, plainly raise a presumption that there was no export value for such or similar merchandise higher than the *appraised* foreign values. However, the appraisements do not give rise to any presumption that there was no export values for such or similar merchandise higher than the foreign values *claimed by plaintiffs*.

---

3. However, the distributors' affidavits do indicate that at least in some instances there were special prices because of the quantity purchased (viz., in the case of original equipment manufacturers and other large quantity buyers), but admittedly there was no "uniform" schedule of quantity discounts.

4. 19 U.S.C. § 1402(a) (1).

Hence, contends defendant, even assuming *arguendo* that the foreign values claimed by plaintiffs are correct, plaintiffs nevertheless cannot prevail inasmuch as they failed to negate the existence of higher export values for such or similar merchandise at the dates of exportation.

Plaintiffs do not dispute that in order to prevail on their claimed foreign values, they assumed the burden of establishing either that there were no export values for such or similar merchandise, or that export values for such or similar merchandise were not higher than the foreign values. Pan-American Plywood Co. v. United States, 43 Cust.Ct. 614, A.R.D. 112 (1959); International Forwarding Co., Inc., et al. v. United States, 34 Cust.Ct. 540, A.R.D. 56 (1955).

In support of the asserted nonexistence of export values for such or similar merchandise, plaintiffs primarily rely upon an affidavit (exhibit 9) of Mr. Reizo Takemura, Managing Director of the Japan Bearing Export Association, which was comprised of companies in Japan exporting antifriction bearings to the United States and other countries. The affidavit indicates that pursuant to the applicable export control laws of Japan, no exports of antifriction bearings were permissible without a license issued by the Association under Takemura's personal supervision. In the concluding paragraph of exhibit 9, the affiant states:

> Because of my responsibility, I state herewith that no one was permitted to export from Japan to the United States antifriction bearings which were produced by the member of the association without permission under my supervision of my organization, and I know from my personal knowledge that

only those who were authorized to apply for such permission did not [freely offer or] sell their merchandise for export to the United States.[5]

Although it is clear that licenses were required for making *exports* of antifriction bearings, indeed no license was shown to be necessary for making *offers* to sell.[6] Accordingly, firsthand knowledge concerning *offers* was exclusively within the possession of the association members, from whom no evidence was adduced, except from The Toyo Bearing Manufacturing Co., Ltd. An affidavit by the managing director of Toyo from 1959 to 1963 (exhibit 1) states that *"our bearings* have not been freely offered or soled [sic] for export to the United States * * *"*. [Emphasis added.] However, such statement does not establish that bearings *similar* to Toyo's were not offered for exportation to the United States.

 In view of the foregoing, I agree with the Government's contention that plaintiffs have not negated the existence of export values for such or similar bearings. For this additional reason, the appraised values are affirmed.

## FINDINGS OF FACT

1. The merchandise in issue consists of "NTN" brand ball bearings, manufactured by The Toyo Bearing Manufacturing Co., Ltd., Osaka, Japan, which was exported from Japan by Mitsubishi Shoji Kaisha, Ltd., and Mitsui & Co., Ltd., during the period from April 30, 1961 to September 30, 1963.

2. The merchandise appears on the Final List promulgated by the Secretary of the Treasury, 93 Treas.Dec. 14, T.D. 54521.

3. The bearings were appraised on the basis of foreign value as defined in

---

5. The bracketed words and other references in the affidavit to offers were stricken at the trial upon defendant's objection, inasmuch as the witness was not shown to have any personal knowledge or competency to testify concerning offers (R. 36). See also the court's written order dated July 13, 1970.

6. There is no dispute between the parties that under section 402a(d) export value may be predicated upon offers to sell in accordance with the provisions of the statute. See United States v. Minkap of California, Inc., by Frank P. Dow Co., Inc., of L. A., 48 Cust.Ct. 708, A.R.D. 144 (1962).

section 402a(c) of the Tariff Act of 1930, as amended, at certain list prices less 47% discount, net packed.

4. On or about the dates of exportation, neither The Toyo Bearing Manufacturing Co., Ltd., nor its sales subsidiary, The Toyo Bearing Sales Co., Ltd., freely offered the merchandise for sale to all purchasers in Japan, but sold only to original equipment manufacturers and to a limited number of distributors.

5. On or about the dates of exportation each of the distributors sold the bearings for home consumption at varying net prices or discounts from a list price. Plaintiffs failed to show the manner in which sales were made and the circumstances surrounding the discount differentials.

6. Plaintiffs failed to negate the existence of export values for such or similar bearings which were higher than the foreign values claimed.

## CONCLUSIONS OF LAW

1. Plaintiffs have failed to establish that the appraised values are erroneous.

2. Foreign value, as defined in section 402a(c), *supra*, is the correct basis of appraisement.

3. The proper foreign values are the appraised values.

Judgment will be entered accordingly.