(R.D. 11756)

TAMI SPORTSWEAR, INC. *v.* UNITED STATES

Entry No. 2048.

(Decided December 22, 1971)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Gilbert Lee Sandler*, trial attorney), for the defendant.

WILSON, Judge: The imported merchandise consists of varied hand-knit ladies' sweaters manufactured by "Sylso S.p.A." of Italy which were exported from Zurich, Switzerland via Trans World Airlines on November 22, 1963. Entry was made at San Francisco, California on November 27, 1963.

It is not disputed that the correct basis for determining the value of the imported merchandise is export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, and that the merchandise does not appear on the Final List, 93 Treas. Dec. 14, T.D. 54521.

Appraisement of the sweaters was made at unit prices per piece which in some instances were higher than the entered values and in other instances lower.

The importer claims that the values for *all* sweaters are either the invoiced unit prices, or $5.02 per pound, or $11.10 per kilo. The importer further contends that the sales by Sylso to Tami Sportswear, Inc., are sales to a selected purchaser at wholesale at prices which fairly reflect the market value of the merchandise, and admits that "The testimony established that the importing company, Tami Sportswear, Inc. and Sylso, the manufacturing company in Italy, are related companies and that the export price was established by bargaining," but maintains that the agreed price "contains all of the elements of value." (Plaintiff brief, p. 1) This admission against interest by plaintiff's counsel is the equivalent of a stipulation establishing certain facts in the case. The courts have frequently stated that a stipulation of counsel must be accepted by the court as establishing the stipulated facts in the case and that no testimony to establish facts contrary to the stipulated facts can be considered. See *H. A. Whitacre, Inc.* v. *United States*, 22 CCPA 623, T.D. 47615 (1935) ; *United States* v. *Zucca & Co.*, 11 Ct. Cust. Appls. 167, T.D. 38959 (1921) ; *Solomon &*

*Co.* v. *United States*, 7 Ct. Cust. Appls. 5, T.D. 36255 (1916); *North American Mercantile Co.* v. *United States*, 18 CCPA 74, T.D. 44030 (1930); *Pacific Trading Co.* v. *United States*, 19 CCPA 361 T.D. 45508 (1932); *United States* v. *Babbit*, 104 U.S. 767 (1881); *Sidney Alterman* v. *Albert Lydick*, 241 F.2d 50 (1957).

A price obtained by *bargaining* is *not* a freely offered price. (See *NTN Bearing Corp. of America et al.* v. *United States*, 67 Cust. Ct. 474, R.D. 11749 (1971), where the court stated that, "It is fundamental, of course, that a price arrived at by *bargaining* [emphasis supplied] between the seller and buyer is not a 'freely offered' price to all purchasers," cited *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129 (1940); *Harry Garbey* v. *United States*, 24 CCPA 48, T.D. 48332 (1936).)

### THE CONSIDERED STATUTES

The pertinent provisions of section 402(b), Tariff Act of 1930, as amended, *supra*, are as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f) of the Tariff Act of 1930, as amended, *supra:*

(f) DEFINITIONS.—For the purposes of this section—
(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
    (A) to all purchasers at wholesale, or
    (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,
without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.
(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

\*      \*      \*      \*      \*      \*      \*

(4) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value, United States value, or constructed value, as the case may be, can be satisfactorily determined:

(A) The merchandise undergoing appraisement and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise undergoing appraisement.

(B) Merchandise which is identical in physical characteristics with, and was produced by another person in the same country as, the merchandise undergoing appraisement.

(C) Merchandise (i) produced in the same country and by the same person as the merchandise undergoing appraisement, (ii) like the merchandise undergoing appraisement in component material or materials and in the purposes for which used, and (iii) approximately equal in commercial value to the merchandise undergoing appraisement.

(D) Merchandise which satisfies all the requirements of subdivision (C) except that it was produced by another person.

## The Issue

Does the evidence establish that the sales to the plaintiff, Tami Sportswear, Inc., by Syslo are sales in the ordinary course of trade to a selected purchaser at wholesale at a price which fairly reflects the market value of the imported merchandise?

## The Record

The official court papers in the case at bar were received in evidence without being marked. (R. 3.) Likewise the official papers in reappraisement R67/18421 involving the same merchandise and parties were received in evidence without being marked. (R. 43.)

Lionel Louis Bernstein was plaintiff's sole witness. Plaintiff's only exhibit is an affidavit executed by John Giampaoli in San Francisco, California on May 8, 1970, 14 days prior to the trial and submission of the case at that port on May 22, 1970. The affidavit was marked plaintiff's exhibit 1 (R. 34), with permission granted to defendant to raise any questions in its brief as to the admissibility of said exhibit. (R. 33.)

The defendant offered a report, exhibit A, prepared by James A. Amoroso, a Treasury Department Customs Representative, dated September 11, 1964 at Rome. Permission was granted by the trial court to plaintiff to raise questions concerning this exhibit in its brief. (R. 48.) The contents of defendant's exhibit A confirm some of the other evidence of record.

Mr. Giampaoli was the plant manager of the Sylso firm in Italy at the time that the involved merchandise was imported. He also was an employee of the plaintiff, a San Francisco firm, at the time of the

trial herein. (R. 34.) However, he was in Italy on vacation on the date of trial, May 22, 1970 "on his wedding anniversary." (R. 34.)

Mr. Bernstein testified that he is president of Tami Sportswear, Inc., in San Francisco; that the firm had manufactured and imported sweaters for 15 years (R. 4) prior to the date of trial herein; that he "indirectly" supervises the sales of sweaters in the United States; that he supervised the importation of sweaters in 1963 and 1964 and is familiar with the merchandise on the invoice herein involved. He testified that Sylso is a manufacturing company in Italy and that its "prime business was exporting to the U.S., primarily, and only, basically, to Tami Sportswear in San Francisco." (R. 5–6.) Sylso's stockholders were Mr. Chusid, Mr. Giampaoli and himself. Bernstein and Chusid owned 96 percent and Giampaoli owned 4 percent of the Sylso stock. (R. 15.)

Bernstein stated that Giampaoli carried on negotiations and "we tried to get the sweaters made for the lowest possible price that we could." This was the basic result and "we planned it to provide between—in the area of 13 to 15 per cent profit in the Italian company." "It is the same profit target we aim at here in San Francisco, and I think competitively they were working on about the same profit there." (R. 6.) Bernstein stated that he sees the production records or an accounting record "once in a great while" and that Mr. Hirschman, the plaintiff's comptroller and its certified public accountant who makes up the firm's reports and statements, also sees them. (R. 9.) However, he was not called to testify.

Under cross-examination Bernstein testified that when he was in Italy, he and Giampaoli, were "involved in negotiations but, primarily, with Mr. Giampaoli, our plant manager, and the local bidding people in the area." (R. 13.) At times, Mr. Bernstein was a party to those negotiations, and he was a party to the negotiations between Tami and Sylso for a price for the sweaters they were to buy on a weight basis. (R. 13.) Bernstein also testified that there was no more bargaining in the negotiations with Sylso than there would be if purchases were to be made from other companies. (R. 16.) During 1963 Sylso did not sell to other American firms as its production did not warrant it and Tami was taking whatever it could make as the item was in demand. (R. 16, 17.) Bernstein did not think that Sylso offered to sell to others during that period. (R. 17.) Bernstein also testified that Giampaoli was first employed by Tami Sportswear, Inc., about 11 years ago, which was prior to the formation of Sylso and that he was still there at the time of the trial herein. (R. 23.)

The Government's trial attorney called attention to the fact that Giampaoli was under the control of Tami and that it could have had him in court available to testify as "he was in a situation where he

was quite familiar with what went on in Sylso in Italy, and yet he was allowed to take a vacation from his job with the plaintiff's firm so that he was not here, available at the time for trial set by the plaintiff himself." (R. 30.)

Where evidence peculiarly within one party's knowledge and control is not adduced or explained, there is a presumption that production would be detrimental. See *The Algie*, 56 F.2d 388 (1932), affirmed in 67 F.2d 1014 (1933) ; *Bartlett* v. *Kane*, 2 F. Cas. 971, No. 1077 (1852) ; *Choctow & M.R. Co. et al.* v. *Newton et al.*, 140 F. 225 (1905) ; *The Bolton Castle, Wylde* v. *Cowin*, 250 F. 403 (1918) ; *Atchison, etc. R. Co.* v. *Davis*, 26 Okl. 359, 109 P. 551 (1910). See also *K. Iguchi* v. *United States*, 4 Cust. Ct. 551, R.D. 4698 (1940), citing 22 Corpus Juris 111.

Though Giampaoli was on vacation at the time of trial, that fact does NOT warrant suspending the longstanding and often repeated rule as above stated by the courts, under the present circumstances.

As hereinbefore noted, counsel for plaintiff conceded that the testimony established that the importing company and Sylso are related companies and that the export price was established by *bargaining*. This is adequately supported by Bernstein, plaintiff's president, who was fully cognizant of the facts. Cases cited, *supra*, indicate that it is fundamental that a price obtained by *bargaining* is NOT a freely offered price to *all* purchasers. Giampaoli carried on negotiations and tried to get the sweaters made at the lowest possible price. This took place when the two named persons, Bernstein and Chusid, between them owned 96 percent of the stock of Sylso, while Giampaoli owned the balance of 4 percent of the stock. When Bernstein was in Italy, he and Giampaoli were involved in negotiations with Sylso of a price on a weight basis for the sweaters they were to buy. Giampaoli who was on vacation at the time of trial executed an affidavit, dated May 8, 1970, plaintiff's exhibit 1, but the defendant could NOT cross-examine him in regard to the statements therein because of Giampaoli's absence and plaintiff's failure to produce him to testify. Cases cited, *supra*, indicate that the courts in numerous cases have held that when evidence peculiarly within one party's knowledge and control is NOT adduced or explained, a presumption is raised that production would be detrimental.

From the record in this case, the court makes the following findings of fact and conclusions of law :

### FINDINGS OF FACT

1. The merchandise involved herein consists of varied hand-knit ladies' sweaters manufactured by "Sylso S.p.A." of Italy, which were

exported from Zurich, Switzerland via Trans World Airlines on November 22, 1963 and entered at the port of San Francisco, California on November 27, 1963.

2. That it is herein stipulated by the said parties that the correct basis for determining the value of the imported merchandise is export value as defined in section 402 (b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, and that the merchandise does not appear on the Final List, 93 Treas. Dec. 14, T.D. 54521.

3. That the said merchandise was appraised at unit prices per piece which constitute increases over some of the entered values and decreases of others.

4. That the plaintiff purchased said merchandise from the manufacturer, Sylso S.p.A., a company related to the plaintiff, in that the president of the plaintiff company, Mr. Bernstein, and a Mr. Chusid, an employee or agent of the plaintiff, were the owners of 96 percent of the stock of Sylso at the time of the sales by Sylso to the plaintiff.

5. That the prices paid by plaintiff to Sylso were arrived at by *bargaining* with the view of allowing a certain margin of profit to Sylso and allowing a similar margin to Tami Sportswear, Inc., on its sales in America.

6. That there is no evidence that Sylso offered to sell its merchandise to any other purchaser except the plaintiff who claims it was a selected purchaser buying in accordance with all of the requirements under section 402 (f) of the Tariff Act of 1930, as amended.

7. That the evidence is insufficient to support the plaintiff's contentions as to value.

CONCLUSIONS OF LAW

As a matter of law, the court concludes:

1. That the correct basis for determining the value of the imported merchandise is export value as defined in section 402 (b) of the Tariff Act of 1930, as amended.

2. That the prices arrived at by *bargaining* between the plaintiff and Sylso do not reflect that the sales made by Sylso to the plaintiff were in the ordinary course of trade to a selected purchaser at wholesale at a price which fairly reflects the market value of the imported merchandise.

3. That the plaintiff has failed to prove that the values fixed by the appraiser are incorrect and therefore said values should stand as the official values herein.

Judgment will be entered accordingly.